BYRD, APPELLEE, *v.* THE BALTIMORE & OHIO RD. CO., APPELLANT.

[Cite as Byrd v. The Baltimore & Ohio Rd. Co.,
10 Ohio App. 2d 187.]

(No. 3031—Decided August 30, 1966.)

*Messrs. Curtner, Selva, Parkin & Seller,* for appellee.
*Messrs. Marshall & Smith,* for appellant.

KERNS, J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Montgomery County entered upon a jury verdict for $102,000 for personal injuries

sustained when an automobile, in which the plaintiff, Bruce Byrd, was a passenger, collided with a railroad engine of the defendant, The Baltimore and Ohio Railroad Company.

At the time of the collision, Byrd was on duty as a police officer of the city of Dayton, and the automobile involved in the accident, which occurred at about 3 a. m. on October 21, 1958, was a police cruiser being driven by another officer, George H. Little, of the Dayton Police Department.

The police cruiser collided with the railroad engine on Gettysburg Avenue which runs generally north and south and is intersected by railroad tracks of the defendant company, which run generally east and west. At the time, the cruiser was proceeding north and the engine was headed east where the tracks intersect the street.

The driver of the cruiser testified that he was traveling at a speed of thirty to thirty-five miles an hour; that the railroad engine came into the range of his headlights at the west edge of Gettysburg Avenue; that it was moving at the speed of a "fast walk" or "three to four miles per hour"; that he first saw the engine when he was approximately 100 to 120 feet from the tracks; that he immediately applied his brakes, but was unable to avoid the collision; and that the engine was moving from the time that he first saw it until the time of the collision. The estimated length of the skid marks caused by the wheels of the police vehicle was 50 to 60 feet.

With its verdict, the jury gave the following answers to special interrogatories submitted by the defendant, appellant herein:

"1. Was the defendant, The Baltimore and Ohio Railroad Company, negligent? Answer: Yes.

"2. If your answer to Interrogatory No. 1 is 'no,' you need not answer this interrogatory.

"If your answer to Interrogatory No. 1 is 'yes,' then you *must* answer this interrogatory.

"Of what did the negligence of the defendant, The Baltimore and Ohio Railroad Company, consist? Answer: There was no light on the engine as the engine moved out on the Gettysburg Avenue crossing.

"3. Was plaintiff familiar with the location of defendant's railroad tracks across Gettysburg Avenue, as the result of driving over said tracks in the course of his employment by the city of Dayton, prior to October 21, 1958, the date of the accident involved in this litigation? Answer: Yes.

"4. Was the whistle sounded on defendant's engine before the locomotive was moved onto Gettysburg Avenue, prior to the collision involved in this litigation? Answer: No.

"5. Was the locomotive headlight lit and shining in the direction in which the engine was headed as it occupied Gettysburg Avenue and at all times as the engine moved in an eastwardly direction immediately prior to the time the motor vehicle collided with the railroad engine? Answer: No.

"6. Was the engine bell on defendant's locomotive sounding at all times as it approached, moved onto or stood on Gettysburg Avenue, prior to the collision? Answer: No.

"7. Did the defendant's crew, or any member thereof, keep a lookout on the tracks ahead of the railroad engine in the direction in which it was moved as it entered and occupied Gettysburg Avenue, immediately prior to the collision with the automobile in which plaintiff was a passenger? Answer: Yes.

"8. Was the negligence of the driver, of the automobile in which plaintiff was a passenger, the sole proximate cause of the collision in which plaintiff suffered injuries? Answer: No."

The first assignment of error in this appeal challenges the sufficiency of the evidence in support of the jury's answers to interrogatories one, two, four, five, six, and eight. Specifically, the defendant contends that the trial court erred in overruling motions for a directed verdict at the close of plaintiff's evidence and at the close of all the evidence and in overruling a motion for judgment notwithstanding the verdict.

This case appears in this court for the second time. During its original appearance, the evidence was discussed at some length, and a judgment of the trial court entered upon a directed verdict for the defendant was reversed. See *Byrd* v. *Baltimore & Ohio Rd. Co.*, Montgomery County Court of Appeals, Case No. 2746, June 1, 1963.

The evidence now before the court appears to be repetitive,

in all crucial aspects, of the evidence previously considered, and the present record discloses nothing which might justify or support a departure from our previous conclusion.

Hence, the first assignment of error will be overruled.

For its second assignment of error, the defendant contends that the judgment of the trial court is against the weight of the evidence and contrary to law.

In order to narrow the issue raised by this assignment of error, the record will be viewed retrospectively. The trial court found that George Little, the driver of the police cruiser, was negligent as a matter of law and that his negligence was a proximate cause of the collision. This finding has ample support from the record.

However, the negligence of the driver cannot be imputed to the plaintiff, and the jury apparently found that the plaintiff was not negligent in any manner contributing to his own injuries. This finding, too, is amply supported by the record.

Hence, the only issues affected by the weight of the evidence at this point are whether the defendant railroad was negligent and whether its negligence was a proximate cause of the collision.

As to the question of negligence, the principal area of conflict depended upon whether the defendant railroad complied with its statutory duty to have an operating bell and light on its engine while proceeding across Gettysburg Avenue.

The testimony of at least twelve witnesses was related to this issue, but it would serve no purpose to repeat their testimony here. Suffice it to say that the evidence upon this issue is in direct conflict, and that the record as a whole would have furnished sufficient support for either negative or affirmative answers to interrogatories five and six.

Under such circumstances, this court may not, of course, substitute its opinion for that of the jury. To the contrary, where the evidence presented upon a disputed issue of fact is susceptible of more than one reasonable construction, a reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment.

But in the presence of evidence supporting a finding of

negligence, there still remains the question of whether such negligence was a proximate cause of the collision. In other words, is the jury's negative answer to interrogatory eight supported by sufficient evidence.

Admittedly, this issue poses considerable difficulty. The driver of the police cruiser was familiar with the grade crossing and the physical surroundings attending in the area. He had crossed the intersection numerous times, and a street light was located only a short distance north of the railroad tracks.

But as heretofore indicated, the plaintff is not legally responsible for the negligence of the driver, and in applying the usual tests of reversibility upon the weight of the evidence (3 Ohio Jurisprudence 2d 809) to the entire record, we cannot disturb the jury's finding that the driver's negligence was not the sole proximate cause of the collision. Although his testimony is in many important respects difficult to reconcile with common experience, reasonable minds could conclude nevertheless that the driver and the defendant railroad were concurrent tortfeasors and that their combined negligence was the proximate cause of plaintiff's injuries.

The second assignment of error will, therefore, be overruled.

The third assignment of error challenges the trial court's action in refusing to give the following special instruction:

"No. 3. Evidence has been offered in this case that the engine bell was not ringing and the headlight was not lighted when some of the witnesses came to the scene of the accident after the collision. This evidence does not prove—it does not even tend to prove that the bell was not ringing and the headlight was not lighted when the locomotive approached the crossing, moved onto the crossing or stood on the crossing before the collision."

In effect, that special instruction tends to nullify a considerable part of the evidence presented by the parties to this action.

"The question whether evidence of the condition of a thing or place before and after an event is relevant and admissible to prove its condition at the time of the event is, to a large extent,

dependent upon the character of the thing or place and the nature of the condition sought to be proven, as constant or variable, and upon the existence of any change during the intervening period, and, to some extent, upon the length of that period." 80 A. L. R. 446.

"As a general rule mere proof of the existence of a present condition or state of facts or proof of the existence of a condition or state of facts at a given time does not raise any presumption that the same condition or facts existed at a prior date, since inferences or presumptions of fact ordinarily do not run backward.

"However, the general rule is not of universal application. Whether the past existence of a condition or state of facts may be inferred or presumed from proof of the existence of a present condition or state of facts, or proof of the existence of a condition or state of facts at a given time, depends largely on the facts and circumstances of the individual case, and on the likelihood of intervening circumstances as the true origin of the present existence or the existence at a given time.

"Accordingly, in some circumstances, an inference as to the past existence of a condition or state of facts may be proper, as, for example, where the present condition or state of facts is one that would not ordinarily exist unless it had also existed at the time as to which the presumption is invoked. An inference that a state of affairs existed at a certain time may be reinforced by evidence that it continued to exist at a subsequent time." 31A Corpus Juris Secundum 305, Section 140a.

"When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance *at a later period*." II Wigmore on Evidence 413, Section 437.

In the present case, the testimony relating to the condition of the engine light and bell after the collision was based, for the most part, upon observations made only a few minutes after the accident. Two police officers testified that they were at the scene within a few seconds, and two other officers related that they reached the scene in less than a minute. Photographs in-

troduced into evidence were taken within ten or fifteen minutes after the collision. There is no evidence of any intervening cause which might have changed the condition of the headlight immediately before and immediately after the accident, and defense witnesses, who were a part of the train crew, said the light was in the same condition after the accident as before.

In the case of *Barbour* v. *Baltimore & Ohio Rd. Co.*, 105 Ohio App. 191, the third paragraph of the syllabus provides:

"3. To the general rule that the mere proof of a present condition of a material object generally raises no inference that the same condition existed at a prior date, exceptions occur when the evidence supports a probability that no intervening circumstances which may have been the source of the subsequent condition have occurred to change the condition from the time in issue to the subsequent time."

Upon the facts and circumstances of the present case, evidence of the condition of the railroad engine immediately after the collision was not weightless. It does tend to prove an essential element of the case. Hence, the special charge submitted by the defendant was not responsive to the evidence and was, in our opinion, properly refused by the trial court.

In conjunction with the third assignment of error, the defendant also argues that the trial court erred in overruling its motion for permission to photograph an engine with the headlight lit, in the presence of the jury, using a similar camera, film and flashbulb as that employed by the investigating officer following the accident.

Any such motion would, of course, be directed to the discretion of the trial court, and the record in this regard discloses no "abuse of discretion," as that term is defined in Ohio cases.

The third assignment of error is, therefore, without merit.

The fourth assignment of error, as stated by the defendant, is that "the court erred, after objection by the defendant, in failing to prevent the plaintiff, during closing argument, from repeatedly arguing that principles of law, contained in special written instructions offered by the defense, were merely arguments or claims made by the defendant."

No record of the proceedings during the closing arguments

of counsel was made at the trial, but within a month after judgment, and during the pendency of a motion for a new trial, the trial court reconstructed certain facts from recollection and found that the following occurred during closing argument:

"During opening arguments, Mr. Selva, counsel for the plaintiff, when referring to special written instructions of law submitted by the defendant, twice used the pronoun 'they' identifying the defendant, when referring to the source of the series of thirteen special written instructions requested by the defendant.

"The objection of Mr. Smith was sustained. Mr. Selva reprimanded and the jury was instructed to disregard the comment. The jury was advised that the instructions were the law of Ohio as given them by the court.

"Three minutes later, still in opening argument, Mr. Selva again referred to the special instructions of the defendant as 'they say' in these special charges, etc. Mr. Selva immediately and without objection apologized to the court before the jury and stated that he 'forgot.'

"In his closing argument, Mr. Selva began a series of similar statements by saying: 'They say that they were not required to have a watchman. They say they were not required to blow a whistle * * * look for the vehicle.' In this series he again used the pronoun 'they,' identifying the defendant as the source of the law in each of several written instructions of law given by the court before argument."

The plaintiff admits the use of the reference "they say" in closing argument but contends that such reference was directed to the argument of opposing counsel rather than to the written instructions of law given by the trial court. The plaintiff also argues that no objection was made by defense counsel during closing argument and that no objectionable statements or remarks were dictated into the record during or immediately after the closing argument.

The defendant contends that the persistent reference to the pronoun "they" identified the defense as the author of certain special charges and constitutes misconduct which prevented a fair trial.

It is fundamental that special instructions given to the jury become the law of the case, and, even though requested by either party, such principles of law are not to be regarded as the law of any particular party. *Lima Used Car Exchange Co.* v. *Hemperly,* 120 Ohio St. 400.

However, the disclosure of the identity of the author of special charges, while improper, does not necessarily constitute prejudicial error. *Harper* v. *McQuown,* 30 Ohio Law Abs. 389; *Haney* v. *Dayton Street Transit Co.,* 45 Ohio Law Abs. 312; *Hudson* v. *Cleveland,* 76 Ohio Law Abs. 360; *Johnson* v. *Hunter,* 103 Ohio App. 31. The governing rule is stated as follows in *Ricks* v. *Jackson,* 108 Ohio App. 466:

"4. Although the trial court should not inform the jury which party requested the special charges submitted to it before argument, the giving of such information to the jury is not reversible error if the charge itself constitutes a correct statement of the law."

Whether the identity of the author of special charges is the result of the inadvertence of the trial court or through the misconduct of counsel, the really serious question in such cases is whether the action of either is prejudicial and prevents a fair trial. Ordinarily, a reviewing court will not reverse for misconduct of counsel unless it clearly appears that it was of such a character and so persistent as to prevent a fair trial of the cause. 4 Ohio Jurisprudence 2d 204, Section 959.

In the case of *Jahraus* v. *Fryman,* 70 Ohio Law Abs. 558, this court treated an assignment of error based upon misconduct similar to that reflected by the present record. But there, counsel definitely identified the author of certain special instructions and referred to them as "trick charges." In that case, the court, while recognizing that counsel for the plaintiff exceeded the bounds of propriety, stated as follows, at page 563:

"The control over the latitude allowed a counsel in the argument of a case requires the exercise of a sound discretion and unless there is an abuse thereof the action of the trial court will not be disturbed. * * *"

In the present case, the defendant made no objection during closing argument to the plaintiff's use of the language "they

say," and, ordinarily, the failure to object to misconduct of counsel at the time it occurs constitutes a waiver of the right to object on review of the case. *Walsh* v. *J. R. Thomas' Sons*, 91 Ohio St. 210; *Yerrick* v. *East Ohio Gas Co.*, 119 Ohio App. 220. Furthermore, at the time of argument, the trial court apparently did not consider the use of the language employed by the plaintiff to be of sufficient importance to voluntarily intervene in the cause.

There is no suggestion in the record that the instructions to which the plaintiff referred are not correct principles of law, and the trial court, which was in a better position to appraise the situation, apparently did not consider the error prejudicial when it ruled on the defendant's motion for a new trial.

Furthermore, in determining whether prejudice intervened from the alleged reference to the special instructions, it is significant perhaps that the tenor of the special charges themselves would give the jury a reasonable foundation for determining the identity of their author without any improper prompting from counsel.

In the case of *Ohio & Western Pennsylvania Dock Co.* v. *Trapnell*, 88 Ohio St. 516, the Supreme Court, in considering misconduct more flagrant than anything appearing of record in the present case, made the following observation:

"* * * Remarks of this kind are wholly improper in the trial of a case and it is the duty of the trial court to see that they are not made, or at least not persisted in, but something must be left to the discretion of a trial court, otherwise we would never reach an end to litigation, and a reviewing court ought not to reverse unless it clearly appears that such misconduct was of such character and so persistent as to prevent a fair trial of the cause. While this court will sustain a trial court in compelling counsel to properly conduct their cause and to refrain from all side remarks and unprofessional conduct either by directions to the jury to disregard these remarks and the punishment of counsel if they persist in offending, or by granting a new trial therefor, yet it will not reverse the judgment until it clearly appears that such conduct was prejudicial to the losing party."

See, also, *Driscoll* v. *Cincinnati Traction Co.,* 88 Ohio St. 150; *Manchester* v. *Youngstown Sheet & Tube Co.,* 24 Ohio Law Abs. 658.

The fourth assignment of error is overruled.

The fifth assignment of error is that "the court erred in failing to withdraw from the consideration by the jury issues of negligence as to which plaintiff failed to maintain the burden of proof."

Under this assignment of error, the defendant railroad again argues that the plaintiff failed to prove that the defendant failed to comply with its statutory duties to sound a whistle, ring a bell or have a headlight on the engine. But as heretofore indicated, the evidence upon this issue is conflicting. It presented a question for the jury to decide, and the jury's finding is not without sufficient support from the record to sustain the judgment. The fifth assignment of error must, therefore, be overruled.

For its sixth assignment of error, the defendant urges that the verdict is excessive and was rendered under the influence of passion and prejudice.

Although the verdict in this case is large, the record is such as to preclude any interference from a reviewing court on the ground that it is excessive, because there is no conflict in the evidence as to the severity and lasting effects of the plaintiff's injuries.

When a remittitur is in the offing, the size of a verdict is one of the primary elements to be considered in determining whether passion or prejudice existed, but passion or prejudice cannot be inferred from this element alone where the undisputed evidence supports the verdict. Here, the record does not clearly reflect that the verdict was influenced by any passion or prejudice. The jury had numerous items of damage to consider, some of which required the application of judgment and discretion within broad limits, and any intereference by this court with the jury's prerogative in this regard would necessarily have to be predicated upon conjecture and speculation.

The sixth assignment of error will, therefore, be overruled.

The seventh assignment of error, as stated by the defend-

ant, is that "the trial court erred in its general charge to the jury and in other respects during the progress of the trial, apparent on the face of the record."

This assignment of error has not been briefed or argued with any particularity or enthusiasm, and our examination of the general charge of the trial court discloses such charge to be fair, clear and complete.

As to the claim of error "apparent on the face of the record," we have again re-examined the entire record in this case with a view to treating the errors assigned cumulatively as they relate to the entire cause. Although the factual findings of the jury are not completely unproductive of some apprehension, we are of the opinion that no prejudicial error justifying a reversal of the judgment intervened in the trial court.

The judgment will, therefore, be affirmed.

*Judgment affirmed.*

SHERER, P. J., and CRAWFORD, J., concur.