McQUEEN ET AL., APPELLANTS, *v.* GOLDEY, APPELLEE.

(No. CA83-05-042—Decided August 6, 1984.)

*Bettman & Donenfeld* and *Marianna Brown Bettman,* for appellants.

*Millikin & Fitton* and *James E. Michael,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Butler County, Ohio.

On the night of August 30, 1980, on U.S. Route 27, plaintiff-appellant, Joanne McQueen, was struck by an automobile driven by defendant-appellee, James M. Goldey, M.D. McQueen, who had left Kings Club Lounge on the west side of U.S. Route 27, was in the process of crossing the highway to go to a bar, the Rusty Nail, on the east side of U.S. Route 27, at the time she was struck. McQueen testified that she was at the centerline when she saw the automobile's headlights and that she began to run because she decided that she would have a good chance of making it to the other side. She was struck in the northbound lane approximately "one step" from the east side of the highway.

There were no marked crosswalks, traffic signals or crossing signs in the area. The lighting conditions were poor between the two business establishments. The posted advisory speed in the area was forty m.p.h. The enforceable speed limit was fifty-five m.p.h.

As a result of the accident, both of McQueen's legs were broken. McQueen underwent numerous hospitalizations, surgeries, and other medical treatments within the two years following the accident. Some of the injuries sustained by McQueen were permanent.

Appellants filed a complaint against appellee alleging negligence. The case was tried before a jury. The jury found that Goldey was twenty percent negligent in that he "was not fully observant at the time of the accident * * * and McQueen was 80 percent negligent." Therefore, pursuant to R.C. 2315.19, the comparative negligence statute, McQueen did not recover any of the damages that she sought.

Appellants bring a timely appeal to this court.

Appellants' first assignment of error is as follows:

"The trial court erred to the prej-

udice of plaintiff/appellants [*sic*] in refusing to grant their motion in limine regarding certain portions of hospital records.''

The assignment of error, as framed by appellants regarding the motion *in limine,* may not be proper as pointed out by appellee. However, appellee agrees and a review of the record shows that appellants timely objected at trial to the admission of the evidence and the trial court permitted such evidence to be admitted. Therefore, we will treat appellants' assignment of error as though it raised the question of the admissibility of certain evidence.

The trial court permitted McQueen's treating physician, Dr. Bryant, to read the following statements from the hospital's emergency room record: " 'patient stepped in front of car and struck by front of * * * [i]n Oxford car driving, * * * [f]ive to ten miles per hour.' '' Appellants contend that said statements as to the cause of the accident were inadmissible hearsay and that the statements were not proven to have been made by McQueen. Appellee contends that the statements were admissible pursuant to Evid. R. 801(D)(2) and/or Evid. R. 803(4).

Evid. R. 801(D)(2) states, in pertinent part:

"A statement is not hearsay if:

"* * * The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, * * *.''

The statements in question are not admissible under Evid. R. 801(D)(2). There was no proof that McQueen ever made the statements. Nor was the truth of the statements ever adopted by McQueen.

Furthermore, the statements are not admissible under the exceptions to the hearsay rule set forth in Evid. R. 803(4) and (6) which state:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

"* * *

"(4) * * * Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

"* * *

"(6) * * * A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness * * *.''

Statements in an official report are not automatically admissible simply because they have been written down in the report.

"* * * [A]lthough such [hospital] records, properly authenticated, may be admissible into evidence, any statements contained therein, disassociated from and not observed as a fact, transaction, occurrence, or event incident to the treatment of the patient, and helpful to the understanding of the medical or surgical aspects of the matter, are not admissible. *Green* v. *Cleveland* (1948), 150 Ohio St. 441 [38 O.O. 311], citing and following *Weis* [v. *Weis* (1947), 147 Ohio St. 416 (34 O.O. 350)].'' *Hytha* v. *Schwendeman* (1974), 40 Ohio App. 2d 478, 484 [69 O.O.2d 405].

Statements in a hospital record regarding the cause of the injury or the manner in which the accident happened

are not admissible insofar as they are not pertinent to the diagnosis or treatment. *Green* v. *Cleveland* (1948), 150 Ohio St. 441 [38 O.O. 311][1]; *Schmitt* v. *Doehler Die Casting Co.* (1944), 143 Ohio St. 421 [28 O.O. 366][2]; *Dorsten* v. *Lawrence* (1969), 20 Ohio App. 2d 297 [49 O.O.2d 392][3]; and *Dickson* v. *Gastl* (1940), 64 Ohio App. 346 [18 O.O. 142].[4]

The Staff Notes to Evid. R. 803(4) state:

"The exception is limited to those statements made by the patient which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted."

The statements, in the case at bar, pertain to the manner of the accident, not the medical or surgical treatment of McQueen. Therefore, the admission of the statements constituted error as they do not qualify as exceptions to the hearsay rule under Evid. R. 803(4) or (6).

However, the existence of error does not necessarily require a reversal unless such error is prejudicial to the complaining party. The error must affect the substantial rights of the complaining party, or substantial justice must not have been done. Civ. R. 61; *Seley* v. *G. D. Searle & Co.* (1981), 67 Ohio St. 2d 192 [21 O.O.3d 121]; *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159 [17 O.O.3d 98]; and *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107 [41 O.O.2d 412].

In the case at bar, a review of the record readily demonstrates that the alleged error was not prejudicial. The statements were merely cumulative and corroborative of the testimony of other witnesses. Dr. Bryant testified that "[s]he said she was struck by a car when she stepped out into the street." He also read from his personal medical notes that McQueen stepped in front of a car. An emergency room nurse testified that she heard McQueen tell appellee that "* * * she was sorry that she had been drinking, that she had walked out in front of his car." Appellee testified that McQueen had made the same statements to him. Additionally, McQueen testified that she saw the car and decided to try to make it to the other side.

As for the statements regarding speed, no one, including appellee, ever contended that appellee's speed was even close to five to ten m.p.h. All of the testimony was that appellee's speed was either thirty-five m.p.h., forty m.p.h., or forty-five m.p.h.

Given the cumulative nature of the statements, we do not view the admission of the statements as prejudicial or affecting the substantial rights of appellants. Therefore, the first assignment of error is hereby overruled.

Appellants' second assignment of error is as follows:

"The trial court abused its discretion in refusing to allow examination of a juror who announced suddenly during the trial that she knew one of the defendant's witnesses."

The following transpired after a witness was called to testify:

"Juror: Excuse me, I do know this person. I knew her by her maiden name, she's an acquaintance of my husband. (Unclear)

"Ms. Bettman: Could I ah . . . could we approach the bench for a moment your Honor?

"* * *

"By the Court: The fact that you

---

[1] Statement in hospital record that patient "[f]ell off streetcar, caught heel" was inadmissible under G.C. 12102-23.

[2] Statement that " '* * * slipped and fell across a pipe which was about 1 ft. off floor. R. chest hit pipe,' " was inadmissible.

[3] Statement in hospital record that "* * * hit by a truck that was passing the bus properly on the right" was inadmissible under R.C. 2317.40.

[4] Statement that plaintiff fell off a porch was inadmissible.

know this witness would that ah, lend you to pay more attention to what she testifies to than the other witnesses?

"Juror: No, it's a casual meeting and (unclear) . . .

"By the Court: I think that will be alright [*sic*], you can go ahead with your witness.

"Mr. Michael: Thank you.

"Ms. Bettman: Your Honor, could I ask a few more questions, this is a serious . . .

"By the Court: No . . . I think it's alright [*sic*]."

Appellants contend that either appellants' counsel or the trial court should have conducted a further inquiry of the juror because the witness gave critical testimony regarding the intoxication and fault of McQueen.

"It is basic that litigants are entitled to have their rights tried and determined by a jury of impartial, unprejudiced and unbiased men and women." *Petro* v. *Donner* (1940), 137 Ohio St. 168, 174 [17 O.O. 513]. *Voir dire* of the jurors ensures the litigant's right to a fair and impartial jury. The extent to which counsel may examine the jurors is within the sound discretion of the trial court. The judgment will be reversed only if the trial court has abused its discretion. *Krupp* v. *Poor* (1970), 24 Ohio St. 2d 123 [53 O.O.2d 320]; *Pavilonis* v. *Valentine* (1929), 120 Ohio St. 154; and *Richley* v. *Bowling* (1972), 34 Ohio App. 2d 200 [63 O.O.2d 368].

The trial court, in the case at bar, did not abuse its discretion in not permitting appellants' counsel to question the juror or conducting further inquiry itself while the trial was in progress. At the outset, we note that appellants did not request the court to make a further inquiry but only requested that appellants be permitted to question the juror. The trial court determines credibility and must have believed the juror when she indicated that she would not be influenced by the witness. Fur-

ther questioning of the juror in the middle of the trial was not necessary.

Additionally, Civ. R. 47(B), which governs challenges to a jury, states, in pertinent part:

"* * * The failure of a party to exercise a peremptory challenge constitutes a waiver of that challenge. If all parties or both sides, alternately and in sequence, fail to exercise a peremptory challenge, the joint failure constitutes a waiver of all peremptory challenges."

Both parties passed on all three of their peremptory challenges. Therefore, there was a waiver of the peremptory challenges. There is no provision in the Civil Rules for a revival of peremptory challenges once the trial has commenced.

Furthermore, there was no challenge for cause available under R.C. 2313.42. A juror's acquaintance with a witness is not a challenge for cause under R.C. 2313.42. The only possible cause in the case at bar would be if the juror demonstrated that she could not be fair and impartial. R.C. 2313.42(J). "* * * [T]he fact that a juror is acquainted with a witness would not necessarily affect the juror's impartiality." *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 22 [35 O.O.2d 8], certiorari denied (1966), 385 U.S. 930. The juror demonstrated to the trial court's satisfaction that she could be impartial. There was, therefore, no mechanism for the removal of the juror.

Furthermore, the witness' testimony was merely cumulative in nature and corroborative of other witnesses' testimony. The witness did not testify that McQueen was intoxicated, only that she smelled alcohol on McQueen's breath. Numerous witnesses had testified accordingly. Even McQueen testified that she had been drinking. Additionally, the witness' testimony regarding McQueen's statements about fault was cumulative.

There was no abuse of discretion by

the trial court, after the trial had begun, in not permitting or conducting a further examination of a juror under the circumstances presented in the case at bar. The second assignment of error is hereby overruled.

Appellants' third assignment of error is as follows:

"The trial court erred to the prejudice of plaintiff/appellants [sic] in overruling objections of appellants' counsel in questions about general drinking habits of Joanne McQueen."

Appellants contend that evidence of character is not admissible to show that a person acted in conformity therewith. We basically agree with the legal proposition set forth by appellants.

Evid. R. 404(A) states, in pertinent part:

"[E]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions: * * *"

None of the exceptions is applicable to the case at bar.

The following colloquy occurred at trial:

"Q. Okay, now Mr. Woodruff, you and your wife, Joanne McQueen, ah, are not what you call regular drinkers of alcoholic beverages are you?

"A. No.

"Q. Uhm, as a matter of fact . . .

"A. Ms. Bettman: Objection, your Honor, uhm . . . may we approach the bench just for a moment?

"* * *

"Q. Ah, Mr. Woodruff, just one more question and I think I'll be done . . . in fact ah, your best recollection is that in the best [sic] five years or so, ah, the most you and your wife would have ah, been drinking alcoholic beverages that you recall ah, your wife consuming, would have been two or three draft beers ah, after eating a dinner, am I right on that?

"Ms. Bettman: I'm going to object, just for the record, again, your Honor.

"By the Court: Be overruled, you can answer.

"A. Ah, if we ever drank beer it was either one or two drafts, and that's not always afternoon? [Sic.]"

Appellants contend that the foregoing questions were asked to show McQueen's proclivity to drink, and that she acted in conformity therewith on the night in question. Appellee contends that the questions "were intended to demonstrate that Joanne McQueen was not a habitual drinker."

The manner in which the questions were framed indicate that said questions were not intended to show that McQueen had a proclivity toward drinking and that she acted in conformity therewith on the night of the accident. Nevertheless, even if we were to consider the questions as error, they would constitute harmless error. There was competent, admissible evidence from McQueen and other witnesses that on the night in question McQueen had been drinking or had the smell of alcohol on her breath. Additionally, the answers given by McQueen's husband clearly indicate that McQueen did not have a proclivity toward the drinking of alcoholic beverages. Therefore, at the most all that appellee proved was that McQueen did not have a habitual drinking problem.

The third assignment of error is hereby overruled.

Appellants' fourth assignment of error is as follows:

"The trial court erred to the prejudice of the plaintiff/appellants [sic] in disallowing the conclusions of appellants' expert witness and in allowing improper expert testimony to be given on behalf of defendant/appellee."

The first issue presented by appellants is whether the trial court erred when it refused to allow their accident reconstruction expert witness to give his

conclusions about the cause of the accident and his opinion on the percentage of fault that he would assign to each party. Appellants' counsel proffered the expert's testimony that Goldey's speed and inattention were responsible for two-thirds, and McQueen was responsible for one-third, of the accident.

Evid. R. 702 states:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Evid. R. 704 states:

"Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."

Evid. R. 704 should not be interpreted as permitting expert testimony on the ultimate issue in each and every instance. "[I]t merely provides that opinion evidence on an ultimate issue is not excludable *per se*. The rule must be read in conjunction with Evid. R. 701 and 702 * * *." Staff Notes to Evid. R. 704.

" 'Expert opinion testimony is admissible as to an ultimate fact without infringing [upon] the function of the jury, if the determination of such ultimate fact requires the application of expert knowledge not within the common knowledge of the jury.' " *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 162 [65 O.O.2d 374], quoting paragraph three of the syllabus in *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77 [40 O.O.2d 87]. See, also, *Ragone* v. *Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St. 2d 161 [71 O.O.2d 164]; *Trebotich* v. *Broglio* (1973), 33 Ohio St. 2d 57 [62 O.O.2d 410]; and *Shepherd* v. *Midland Mut. Life*

*Ins. Co.* (1949), 152 Ohio St. 6 [39 O.O. 352].

In *Trebotich, supra,* and *Dickman* v. *Struble* (1957), 104 Ohio App. 44 [4 O.O.2d 95], expert testimony was not admissible on the ultimate issue of the point of impact in an automobile accident. The court stated that "[t]he point of impact on the road of two colliding automobiles is a subject within the experience, knowledge or comprehension of the jury." *Trebotich, supra,* at paragraph two of the syllabus.

The accident reconstruction expert witness testified as to the speed of appellee's car upon the point of impact with McQueen (forty m.p.h.), the distance that would be illuminated by the car's headlights, the distance within which a car should be able to stop, whether appellee had applied the brakes, how the accident happened, and other similar issues. Other witnesses, including an eyewitness, also testified as to the speed of appellee's car and the actions of McQueen.

The ultimate questions before the jury were who caused the accident and the percentage of fault of each party. These questions were not of a highly technical nature nor beyond the comprehension of the average juror. The members of the jury had all the necessary facts before them from which they could ascertain the cause and fault. The expert witness was no more qualified than the average layman to determine whether appellee was paying proper attention or going too fast under the circumstances, or whether McQueen was paying proper attention or misjudged the speed and location of the automobile.

We hold that the cause of the accident in the case at bar, be it the speed or inattention of appellee or the inattention or bad judgment of McQueen, was a subject within the experience, knowledge and comprehension of the jury. The expert witness' testimony regarding cause and the percentage of each party's fault

would not "serve to enlighten the jury with respect to a matter outside its competence but rather * * * [would be] a clear invasion of the jury's province on the precise ultimate fact[s] in issue." *Trebotich, supra,* at 61. Therefore, the trial court did not err in not permitting the expert to testify as to the cause of the accident and the percentage of fault of each party.

The second issue raised by appellants is that the trial court erred when it permitted a witness, a former police officer, to give opinion testimony because the police officer did not qualify as an expert under Evid. R. 702. Apparently, the testimony that was objected to by appellants was the officer's estimate of the speed of appellee's car that he had determined from the skid marks and his opinion of whether the occupants of the car would sustain injuries under the circumstances. The witness was the first police officer on the accident scene and was also the officer who conducted the investigation of the accident.

"[T]he competency of an expert witness is a matter within the sound discretion of the trial court, and a court's ruling thereon will not be reversed unless there is a clear showing of an abuse of this discretion." *Alexander* v. *Mt. Carmel Medical Center* (1978), 56 Ohio St. 2d 155, 157 [10 O.O.3d 332], citing *Ohio Turnpike Comm.* v. *Ellis* (1955), 164 Ohio St. 377 [58 O.O. 179]. " '[T]he term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. * * * [Citations omitted.]' " *Calderon* v. *Sharkey* (1982), 70 Ohio St. 2d 218, 219-220 [24 O.O.3d 322].

"It is a general rule that the expert witness is not required to be the best witness on the subject. * * * [Citation omitted.] The test is whether a particular witness offered as an expert will aid the trier of fact in the search for the truth. * * * [Citation omitted.]" *Alexander, supra,* at 159. See, also, *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456 [21 O.O.3d 285]. "As a prerequisite to testifying, the expert must be sufficiently qualified, that is, it must appear that his opinion is based upon some superior knowledge not possessed by ordinary jurors. * * * [Citations omitted.]" *State Auto. Mut. Ins. Co., supra,* at 159-160. Comparison of expert witnesses' professional stature and the weight of the experts' testimony are for the trier of the facts. See *Mannino* v. *International Mfg. Co.* (C.A. 6, 1981), 650 F.2d 846.

The police officer testified regarding his qualifications as follows: he had spent eight years with the Butler County Sheriff's Department and over two years with the Hanover Township Police Department; part of his duties with the Hanover Township Police Department was accident reconstruction; he had received formal training in the field of accident reconstruction, *i.e.,* in-service training in basic accident investigation and a two-week course offered by the State Highway Patrol Academy in technical accident investigation[5]; and he had investigated hundreds of accidents. The officer also testified as to the method he used in determining the speed from the skid marks.

A police officer in *Davis* v. *Zucker* (App. 1951), 62 Ohio Law Abs. 81, was permitted to testify as to his opinion of the speed of a car based upon the length and density of the skid marks. The court stated:

"The extent of his knowledge and dependability of his conclusions as

---

[5] The officer testified that the technical accident investigation course consisted of reconstruction of accident scenes such as flips, vaults, hows and whys of skid marks, damages, etc.

disclosed by the record became a question of fact for the jury. It is a matter of general knowledge that, as a result of many years of study and research by traffic engineers, it is possible to accurately judge the speed of a motor vehicle from skid marks." *Davis, supra,* at 85.

The police officer, in the case at bar, presented evidence that he had received training in accident reconstruction. The fact that he had received less formal training than appellants' expert witness raised a question of fact for the jury's determination regarding the dependability and extent of his knowledge and conclusions. The officer's opinion was based upon knowledge not possessed by the ordinary juror. He only testified regarding two matters and did not reconstruct an elaborate accident scenario as did appellants' expert witness. Additionally, this police officer was the officer who investigated the accident. We cannot say that the trial court's decision in permitting the police officer to testify regarding the two matters was arbitrary, unconscionable or unreasonable.

For the foregoing reasons, the fourth assignment of error is hereby overruled.

Appellants' fifth assignment of error is as follows:

"The trial court erred to the prejudice of plaintiff/appellants [*sic*] in overruling objections to defendant/appellee's experiment testimony."

Subsequent to the accident, appellee drove to the accident site for the purpose of determining the area illuminated by his automobile's headlights. At trial, appellee testified as to the results of the alleged experiment. The trial court admitted such testimony over appellants' objection.

The Ohio Supreme Court has stated that:

"Evidence of experiments performed out of court, tending to prove or disprove a contention in issue, is ad-missible if there is a substantial similarity between conditions existing when the experiments are made and those existing at the time of the occurrence in dispute; dissimilarities, when not so marked as to confuse and mislead the jury, go to the weight rather than the admissibility of the evidence." *St. Paul Fire & Marine Ins. Co.* v. *B. & O. R.R. Co.* (1935), 129 Ohio St. 401 [2 O.O. 396], paragraph one of the syllabus. See, also, *Leichtamer, supra.*

The admissibility of experiment evidence is within the discretion of the trial court. The admission of such evidence will only be overturned if such admission constitutes an abuse of discretion. *Leichtamer, supra; St. Paul Fire & Marine Ins. Co., supra; King* v. *Branch Motor Express Co.* (1980), 70 Ohio App. 2d 190 [24 O.O.3d 250].

Appellants contend that appellee did not show that the alleged experiment was conducted under substantially similar conditions. The appellee testified that his car's headlights, the lighting conditions, and the road conditions were substantially the same as when the accident occurred. Appellee did not testify as to when he conducted the alleged experiment.

First, we note that appellants initially objected because appellee did not testify regarding the similarity of the conditions and, once the trial court had the appellee testify as to the conditions at the time of the alleged experiment, appellants did not raise an objection to the testimony. Second, the testimony by appellee demonstrated that there was substantial similarity between the conditions at the time of the accident and when he conducted the alleged experiment. Any dissimilarities were not so marked as to confuse and mislead the jury. The weight and credibility of appellee's testimony was for the jury's determination.

The fifth assignment of error is hereby overruled.

Appellants' sixth assignment of error is as follows:

"The trial court so cumulatively erred in its rulings of law and management of the trial as to deny the plaintiff/appellants [*sic*] a fair trial."

Appellants contend that even though this court may decide that some errors individually were harmless, the accumulation of harmless errors plus certain actions of the trial judge[6] constituted prejudicial error that deprived appellants of a fair trial.

In Ohio, the concept that cumulative harmless errors can constitute reversible error has been explicitly rejected by at least one court of appeals. *Nicholas* v. *Yellow Cab Co.* (1962), 116 Ohio App. 402. [22 O.O.2d 232]; and *Richlin* v. *Gooding Amusement Co., Inc.* (1960), 113 Ohio App. 99 [17 O.O.2d 100]. However, other courts have implicitly recognized and applied the concept in criminal and civil cases. See *State* v. *Rutherford* (1960), 171 Ohio St. 118 [12 O.O.3d 136]; *State, ex rel. Schulman,* v. *Cuyahoga Cty. Bd. of Elections* (1957), 167 Ohio St. 19 [3 O.O.2d 462]; *James* v. *Franks* (1968), 15 Ohio App. 2d 215 [44 O.O.2d 373]; *Byrd* v. *B. & O. RR. Co.* (1966), 10 Ohio App. 2d 187 [39 O.O.2d 376]; and *Younce* v. *Baker* (1966), 9 Ohio App. 2d 259 [38 O.O.2d 316].[7]

Without addressing the relative merits of the cumulative error concept,

we conclude that even if we were to accept and apply the concept to a civil case, the accumulation of harmless errors in the case at bar did not constitute prejudicial error. A review of the record demonstrates that even with the errors, substantial justice has been done and the accumulation of errors did not affect or prejudice any substantial rights of the appellants.

The sixth assignment of error is hereby overruled.

It is the order of this court that the judgment herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

HENDRICKSON, P.J., KOEHLER and JONES, JJ., concur.

---

[6] Appellants' counsel had to remind the trial court of her right to give rebuttal testimony. Counsel also had to remind the trial judge to give the jury the charge on consortium. The trial court referred to appellants by their first names and the appellee as Dr. Goldey.

[7] All three appellate cases cited for this proposition were decided by the Court of Appeals for Montgomery County and the same panel of judges decided each case. In *Younce, supra,* at 264, Judge Crawford said with respect to the cumulative effect of errors, "[t]he preceding assignments not being well taken, this also is without merit."