OPINION
{¶ 1} Joann Wise and her husband appeal from a judgment of the Greene County Court of Common Pleas, which entered judgment in favor of Thomas Meyer after a jury trial. Wise claims that the trial court improperly allowed certain testimony of Meyer's expert witness, Charles I. Kirk.
 {¶ 2} According to the record, on July 19, 2002, Joann Wise was operating a Hyster finishing roller in a construction zone on West Enon Road, a two-lane road, in Greene County, Ohio. New asphalt was being laid on the northbound lane of the road; the asphalt extended to the middle of the yellow lines. In the construction zone, northbound traffic was diverted into the southbound lane, and flaggers were present to facilitate the use of the shared lane. In the early afternoon, Wise was rolling the new asphalt, traveling southbound. Her seat was located on the right side of the roller. As Wise rolled the edge of the new asphalt with the drum of the roller, Thomas Meyer passed her in a 24-foot box delivery truck, which had been leased from Enterprise Rent-A-Car. At that time, Meyers was delivering Sears merchandise for Exel Direct, Inc., pursuant to a contract between Exel Direct and Meyer Trucking, Meyer's business. When Meyer passed Wise, the passenger side mirrors of the truck hit Wise's arm and seat, causing injuries.
 {¶ 3} On January 16, 2004, Wise brought suit against Meyer, Sears and Enterprise, asserting negligence claims. Her husband brought a claim for loss of consortium. In an amended complaint filed on June 2, 2004, Wise named Exel Direct as an additional defendant. On July 27, 2004, Enterprise was voluntarily dismissed from the litigation.
 {¶ 4} On January 7, 2005, Meyer, Sears and Exel Direct disclosed the names of their expert witnesses, including Charles I. Kirk, a certified accident reconstructionist. Wise deposed Kirk on March 17, 2005. Subsequently, she filed a motion to exclude Kirk as a witness, pursuant to Evid.R. 702 and 703, which the court construed as a motion in limine. On April 6, 2005, the court ruled that, based on the information provided by Wise, "Mr. Kirk does not render an expert opinion as contemplated under Ohio Civil Rule 702 and 703. * * * If the Defendant complies with the requirements of Evidence Rules 702 and 703, he will be permitted to render an expert opinion, if not, no opinion will be permitted. Mr. Kirk may testify as to those matters to which he has conducted an investigation as long as a proper foundation is made and the testimony is relevant."
 {¶ 5} The case proceeded to a jury trial on August 29, 2005. At the close of Wise's case, Sears and Exel Direct separately moved for directed verdicts on the ground that no reasonable juror could find that Meyer was an agent for either company. The court granted a directed verdict for Sears and deferred ruling on Exel Direct's motion. Meyer and Exel Direct presented their evidence, which included Kirk's testimony. At the close of Meyer's and Exel Direct's case, Wise moved to strike Kirk's testimony on the grounds that Kirk had expanded his opinion since his deposition and that his opinions were based on inaccurate underlying facts. The court denied the motion. Exel Direct also renewed its motion for a directed verdict, which the court granted. The jury, therefore, was presented only with the issue of Meyer's liability. After deliberating, the jury found that Meyer had not been negligent and entered a general verdict in favor of Meyer and against Wise. On September 23, 2005, the court entered judgment in accordance with the jury verdict.
 {¶ 6} On appeal, Wise claims that the trial court abused its discretion in refusing to strike Kirk's testimony for four reasons: (1) Kirk's testimony at trial constituted "unfair surprise"; (2) Kirk's testimony "was unreliable, inadmissible and impermissibly based on hearsay"; (3) Kirk impermissibly testified on an ultimate issue of fact; and (4) Kirk impermissibly testified as an expert in an area in which he was not qualified as an expert.
 {¶ 7} We note that Wise raised few objections to Kirk's testimony during trial testimony on August 29, 2005. At that time, Wise objected to Kirk's testimony about the rolling of asphalt, arguing that Kirk was not an expert in construction. On September 1, 2005, Wise moved to strike Kirk's testimony on the grounds that he had expanded his opinion since his deposition and that his opinions were based on inaccurate underlying facts because the vehicles had been moved prior to the highway patrol officer's arrival. Wise did not argue that Kirk's testimony had been based on hearsay or that he had impermissibly testified on an ultimate issue of fact.
 {¶ 8} First, Wise claims that the trial court should have stricken Kirk's trial testimony that Wise had probably been responsible for the accident on the ground that the testimony constituted "unfair surprise."
 {¶ 9} "The discovery rules are designed to eliminate the surprise of undisclosed expert opinions at trial. A party is required to provide opposing counsel `with updated and complete discovery regarding the substance of expert testimony.'"Fehrenbach v. O'Malley, 164 Ohio App.3d 80, 100,2005-Ohio-5554, 841 N.E.2d 350, quoting Shumaker v. Oliver B.Cannon Sons, Inc. (1986), 28 Ohio St.3d 367, 370,504 N.E.2d 44. When a violation of Civ.R. 26(E)(1) occurs, the trial court has broad discretion to fashion an appropriate sanction, including the exclusion of the expert's testimony. Huffman v.Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 86,482 N.E.2d 1248; Wright v. Suzuki Motor Corp., Meigs App. Nos. 03CA2, 03CA3, 03CA4, 2005-Ohio-3494, ¶ 64.
 {¶ 10} Decisions regarding the admissibility of evidence at trial are within the broad discretion of the trial court and will be upheld absent an abuse of discretion. Beard v. Meridia HuronHosp., 106 Ohio St.3d 237, 239, 2005-Ohio-4787, 834 N.E.2d 323. The term "abuse of discretion" connotes more than a mere error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. "Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice."Beard, 106 Ohio St.3d at 239.
 {¶ 11} During his deposition, Kirk was asked to express his opinions about the cause of the accident. In relaying the information upon which he had relied, Kirk indicated the relevant measurements that were taken. Meyer's lane of travel was nine feet and three inches wide, and his box truck was eight feet wide. The truck's side mirrors extended an additional four to six inches beyond the truck's width. West Enon Road was divided by double yellow lines, each of which was four inches wide with a four-inch space between the lines. The new asphalt was laid to the center of the four inch space between the yellow lines; thus, there was six inches from the edge of the new asphalt to the edge of the yellow line closest to Meyer's lane. The body of the Hyster roller extends five inches to the side of the drum. Wise had stated in her deposition that she was rolling along the edge of the asphalt so that there would not be a lip. Accordingly, the body of the Hyster extended, at least, within one inch of Meyer's lane (i.e., over the remaining two inch gap that was exposed between the two yellow lines plus three inches of the yellow line closer to Meyer). Moreover, Kirk relied upon Wise's statement that she was leaning out so that she could look down and see the edge of the drum touching the edge of the asphalt.
 {¶ 12} At various points in Kirk's deposition, Kirk was asked whether it was more likely that Wise had encroached on Meyer's lane. Kirk repeatedly responded that Wise was more likely the cause of the accident, as follows:
 {¶ 13} Q: "* * * Is it your opinion that Joann Wise caused the collision to occur?"
 {¶ 14} A: "I think there's — there's more evidence from the pictures that said or leads me to believe that she could have been [right] of center into his lane of traffic more than he could have been into hers."
 {¶ 15} * * *
 {¶ 16} Q: "I understand, but you're the expert, sir. So let me ask you what opinions are you going to proffer in this case?
 {¶ 17} A: "The fact that I see nothing on those photographs or on the roadway or on the truck that would lead me to believe that the truck was [right] of center."
 {¶ 18} * * *
 {¶ 19} A: "* * * [I]f [Wise is] coming down through here and her edge is right — her edge of the roller is right out to the edge of the pavement, she's got five inches beyond that and so that puts her actually just right at the center or right at the edge of the yellow line that is his lane of travel. So she leans over any distance at all, she's encroaching upon his lane."
 {¶ 20} * * *
 {¶ 21} Q: "Okay. So my — the question was, are you going to offer an opinion to a reasonable degree of scientific certainty that the mirror on the right side of this box truck did not extend into Joann Wise's — the lane in which she was operating the vehicle?
 {¶ 22} A: "I can position the vehicle, move it to the right and to the left, and I can position her vehicle and move it to the right and move it to the left. This is going to be very close as far as who actually impacted who, but in my opinion the truck never got over into her lane based upon what I can see."
 {¶ 23} Wise notes various points in Kirk's deposition where he declined to state who was at fault. Kirk was reluctant to state a opinion on liability, which he apparently perceived to be a legal conclusion. When asked who was at fault, he stated: "The only thing I can tell you is that there are pros and cons and you can talk about her leaning or not leaning, and I can talk about there's no pavement moved at all for the truck, and when it comes right down to it a jury has to make the final analysis, sir." When asked again if his opinion answered the question on who was liable, Kirk responded: "The only thing I can do is testify to everything that I can see in the crash report and the jury makes the decision." Although Kirk would not state who he believed was liable, his testimony at the deposition placed Wise on notice that he believed Wise to have been the likely cause of the accident.
 {¶ 24} Although Wise asserts that Kirk "expanded" his opinion at trial, without prior notice to her, our review of Kirk's trial testimony does not reveal any substantial change in his testimony. Kirk again testified that he concluded that the box truck did not go right of center, that there was no contact between the body of the truck and the body of the Hyster, and that Wise had probably been right of center.
 {¶ 25} We note that there seemed to be a consistent level of miscommunication between Wise's counsel and Kirk during his deposition and at trial. Kirk appears to speak of the "roller" to mean the drum of the Hyster, which was used to compress the asphalt. Wise's counsel appears to have interpreted "roller" to mean the Hyster in its entirety. Accordingly, there was confusion when Kirk testified regarding the location of the "roller" in relation to the edge of the asphalt, particularly when Kirk indicated that the roller was, at least, at the edge of the asphalt but the vehicle extended beyond the lip of the asphalt. In addition, Wise's counsel appears to have equated an opinion on liability to an opinion on causation whereas Kirk appears to have distinguished between the two, as mentioned above.
 {¶ 26} In sum, upon review of Kirk's deposition and trial testimonies, the trial court did not err in failing to strike Kirk's trial testimony due to "unfair surprise." Kirk's deposition testimony clearly expressed his opinions on causation, i.e., that Wise had probably encroached on Meyer's lane, causing the collision.
 {¶ 27} Second, Wise asserts that Kirk's testimony should have been stricken because it "was unreliable, inadmissible and impermissibly based on hearsay." Wise states that Kirk did not visit the scene of the accident, did not examine the finishing roller, and did not measure the truck that Meyer had driven (although he measured other comparable trucks). Wise emphasizes that there was testimony that the vehicles had been moved prior to the police officer arriving at the scene. She argues that the moving of the vehicles rendered the information in the officer's report unreliable.
 {¶ 28} The admissibility of an expert witness's opinions is governed by Evid.R. 702-705. Of relevance, Evid.R. 702 provides: "A witness may testify as an expert if all of the following apply:
 {¶ 29} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 30} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 31} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *"
 {¶ 32} Evid.R. 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence * * *." "For facts or data to be perceived by the expert, the facts must either be within the personal knowledge of the expert or based upon facts shown by other evidence." Dejaiffe v.KeyBank USA Natl. Assn., Lucas App. No. L-05-1191,2006-Ohio-2919, ¶ 18.
 {¶ 33} Evid. R. 705 provides: "The expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data. The disclosure may be in response to a hypothetical question or otherwise."
 {¶ 34} "Weaknesses in the factual bases of an expert's testimony go to the weight and credibility of the expert's testimony, not to its admissibility." Dejaiffe at ¶ 19. As stated in Johnson v. Knipp (1973), 36 Ohio App.2d 218, 220,304 N.E.2d 914, "[t]he absence of certain facts, or the failure of proof of others, goes to the weight and credibility of the testimony, and not to its admissibility. The burden falls on the opposing party to discredit or minimize the expert's testimony through cross-examination * * *."
 {¶ 35} In the present case, Kirk testified that he based his opinions on the Ohio Traffic Crash Report, photographs of the scene taken by the highway patrol, a supervisor's incident investigation report, Wise's complaint and amended complaint, the depositions of Meyer and Wise, and notarized statements of witnesses Donald Mullin, Jody Pencil, Craig Barnes, and Ed Brown. Kirk testified that the measurements relevant to the roadway and vehicles were provided in the police report, and that he relied upon the photographs to examine the edge of the asphalt, whether there had been any paint transfer between the vehicles, and the glass debris.
 {¶ 36} In our view, Kirk was entitled to rely upon all of the evidence upon which his opinion was based. Kirk based his understanding of the underlying circumstances of the accident upon the deposition testimony and affidavits of the parties and witnesses. This was permissible. "Requiring personal knowledge of the underlying event would prevent expert testimony in all situations in which the expert was not also an eyewitness to the underlying event. When a qualified expert relies upon facts shown by admissible evidence, his affidavit is admissible for purposes of summary judgment." Frederick v. Vinton County Bd. of Educ., Vinton App. No. 03CA579, 2004-Ohio-550, ¶ 24. The expert may continue to rely upon those sworn statements when reiterating his opinion at trial.
 {¶ 37} Evid.R. 803(8), which sets forth an exception to the hearsay rule, allows the admission of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report * * *." "`A police report constitutes a `public record' for evidentiary purposes. Evid.R.803(8). Portions of a police report which contain `matters observed pursuant to a duty imposed by law as to which matters there was a duty to report' are admissible in evidence. (citations omitted.) The observations must be either the firsthand observations of the official making the report or those of one with a duty to report to a public official." Estate ofDoudican v. Dieckman, Montgomery App. No. 21011, 2005-Ohio-6393, ¶ 22, quoting Muncy v. American Select Ins. Co. (1998),129 Ohio App.3d 1, 716 N.E.2d 1171.
 {¶ 38} Kirk stated that he relied upon the measurements provided in the Ohio Traffic Crash Report, and that these measurements were taken by the highway patrol officer as a part of his duties. In addition, the photographs that he relied upon were also taken by the patrol officer. Because these portions of the police report were drawn from the officer's observations and not from witnesses' statements at the scene, they fall within the exception set forth in Evid.R. 803(8).
 {¶ 39} As stated above, Wise claims that the photographs and the measurement of the glass debris field are unreliable, because the truck and the roller were moved prior to the officer's arrival. As noted by Meyer, Kirk used the glass debris to determine the speed that the truck was traveling at the time of the accident. Kirk further testified, however, that the movement of the vehicles "would make no difference as far as the length of that glass debris field." He further stated that he was asked "to check on the speed of the truck as far as the speed limit was concerned, and speed wasn't an issue." To the extent that the movement of the vehicles raised a question as to the reliability of the photos, we believe that such questions go to the weight to be given to Kirk's testimony, not to its admissibility. Moreover, upon review of the trial testimony, Kirk relied upon the photographs primarily to determine paint transfers and the condition of the asphalt. There is no suggestion that the movement of the vehicles affected the photographs' reliability with regard to those issues. In addition, nothing in the record suggests that the photographs had been challenged at trial as not properly authenticated. Accordingly, the trial court did not err in failing to strike Kirk's expert testimony on the ground that it was based on unreliable facts and hearsay.
 {¶ 40} Third, Wise claims that the trial court impermissibly allowed Kirk to testify on an ultimate issue of fact. Evid. R. 704 provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." However, "[i]f the trier of fact can understand the issues and the evidence and arrive at a correct determination, expert testimony is unnecessary and inadmissible." State v. Daws
(1994) 104 Ohio App.3d 448, 462-63, 662 N.E.2d 805; Olivier v.Leaf Vine, Miami App. No. 2004-CA-35, 2005-Ohio-1910, ¶ 10.
 {¶ 41} Wise asserts that the jurors could have determined liability based on their experience and knowledge and, thus, Kirk's expert opinion on an ultimate issue should have been excluded. In support of her assertion, she relies primarily uponMcQueen v. Goldey (1984), 20 Ohio App.3d 41, 484 N.E.2d 712. InMcQueen, the Twelfth District concluded that the trial court did not abuse its discretion in excluding an expert's opinion as to causation and fault. The court reasoned:
 {¶ 42} "The accident reconstruction expert witness testified as to the speed of appellee's car upon the point of impact with McQueen (forty m.p.h.), the distance that would be illuminated by the car's headlights, the distance within which a car should be able to stop, whether appellee had applied the brakes, how the accident happened, and other similar issues. Other witnesses, including an eyewitness, also testified as to the speed of appellee's car and the actions of McQueen.
 {¶ 43} "The ultimate questions before the jury were who caused the accident and the percentage of fault of each party. These questions were not of a highly technical nature nor beyond the comprehension of the average juror. The members of the jury had all the necessary facts before them from which they could ascertain the cause and fault. The expert witness was no more qualified than the average layman to determine whether appellee was paying proper attention or going too fast under the circumstances, or whether McQueen was paying proper attention or misjudged the speed and location of the automobile." Id. at 48.
 {¶ 44} In response, Meyer cites to Johnoff v. Watson, Lucas App. No. L-03-1245, 2004-Ohio-6882, in which the Sixth District determined that the trial court had not abused its discretion in allowing an accident reconstructionist to testify to how that accident had occurred. The court stated: "Here, the testimony was helpful to the jury. Accident reconstruction is a highly technical area and, after the expert has testified as to the various measurements he or she took and after coming to conclusions about the point of impact, it is helpful to a jury to know `what it all means.' In this case, after hearing [the expert's] testimony about which direction the bike and car were traveling and possible scenarios about how the bike came to be in the path of the car, it was helpful to the jury to know the import of this testimony. Additionally, since the trial court instructed the jury to give all expert testimony whatever weight the jury thought it deserved, we cannot see how allowing the testimony caused any undue prejudice to appellant." Id at ¶ 23 (citations omitted). The court further distinguished McQueen,
noting that the testimony was "more technical than whether a party was attentive enough or whether a party's speed was excessive."
 {¶ 45} In our view, Kirk's opinion testimony is more comparable to Johnoff than McQueen. Kirk's opinion was based upon his specialized knowledge, his evaluation of the condition of the asphalt, and his experience at construction zones. Under these circumstances, the trial court could have reasonably concluded that the jury would need assistance in interpreting Kirk's data. Although the trial court also could have reasonably concluded that the jury would be able to digest the underlying facts and data provided by Kirk without his opinion on who had caused the accident, the trial court did not abuse its discretion in permitting Kirk's testimony. Finally, Wise argues that the trial court impermissibly permitted Kirk to testify in detail as to how asphalt is laid when he was not qualified as an expert in construction analysis. She further claims that Kirk's testimony was highly prejudicial.
 {¶ 46} Wise's initially objected on the ground that Kirk was not an expert in construction analysis when Kirk stated that the outer edge of the fresh asphalt must be rolled in order to avoid a lip and that all operators will watch the road and the roller go across that edge. The court sustained Wise's objection to that testimony. The court permitted Kirk to testify as to the pivot point of the roller, i.e., the point at which the roller will begin to tip. Kirk later testified that he based his opinion that the drum had to be all the way up to or slightly beyond the edge of the new asphalt on the fact that he saw no lip in the asphalt when he viewed the photographs with a high-powered magnifying glass. Kirk also later testified, over objection, that there would not necessarily be physical evidence of the Hyster encroaching on Meyer's lane, because the machine would not "crimp down" the edge until it encroached past its pivot point.
 {¶ 47} Assuming, for the sake of argument, that Kirk should not have testified that the drum of the roller needed to be operated at least to the edge of the asphalt to avoid a lip, Wise herself testified at trial that she had rolled over to the edge of the new asphalt with the drum of her front roller so that she would not have a raised lip at the edge of the new asphalt. Accordingly, Wise was not prejudiced by Kirk's testimony that she had operated the roller along the outer edge of the new asphalt. Kirk did not testify that the drum of the roller went right of center, and there is no indication in the record that Meyer argued to the jury that drum itself went right of center. Accordingly, we find no reversible error in this regard.
 {¶ 48} The assignment of error is overruled in its entirety.
 {¶ 49} The judgment of the trial court will be affirmed.
Brogan, J. and Fain, J., concur.