KITCHENS, APPELLANT, *v.* McKAY; VOLKSWAGEN OF AMERICA, INC., APPELLEE.

166

(No. CA87-05-011 — Decided
December 31, 1987.)

*Alfred J. Weisbrod,* for appellant.
*Porter, Wright, Morris & Arthur,*

*Thomas L. Czechowski* and *Thomas H.
Pyper,* for appellee.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Clinton County.

Plaintiff-appellant, Steven Kitchens, appeals a directed verdict granted to defendant-appellee, Volkswagen of America, Inc.

The case at bar originated from a vehicular accident which occurred in Clinton County on June 26, 1981. Appellant was driving his 1961 Volkswagen van or Type II Transporter[1] west on Gurneyville Road, a two-lane highway, when he approached a truck driven by Thomas A. McKay also heading west on Gurneyville Road. The McKay vehicle had either stopped or was barely moving, and appellant decided to pass to the left of McKay. As appellant attempted to pass, McKay suddenly began to turn left into a driveway. Appellant turned his vehicle back to the right in an unsuccessful attempt to avoid McKay, colliding with the rear of the McKay vehicle. The front end of appellant's Volkswagen collapsed and the vehicle turned over on its side. Appellant suffered a broken tibia and femur on his left leg.

On November 12, 1982, appellant filed a complaint in the Clinton County Court of Common Pleas, naming appellee, McKay, and Volkswagenwerk, A.G., as defendants. The complaint alleged a cause of action against McKay in negligence and one in products liability against appellee and Volkswagenwerk, A.G.[2]

---

[1] The Volkswagen Type II Transporter is a multi-purpose forward-controlled vehicle, one in which the operator's position is located at the very front of the vehicle with the engine located in the rear, allowing for the maximum cargo/passenger capacity behind the operator. The Volkswagen Transporter was a revolutionary vehicle design which other manufacturers copied for the production of vans and other transporter vehicles.

[2] Prior to trial, appellant's complaint against Volkswagenwerk, A.G., was

During discovery, appellant named Nicholas Miller as an expert witness. Appellee filed a motion *in limine* which requested, among other things, that the trial court bar Miller from testifying on the basis that Miller was not an expert. Trial by jury commenced on March 16, 1987. After appellant testified, appellant called Miller to the stand. Appellee's counsel conducted a lengthy voir dire of Miller on his qualifications as an expert. At the conclusion of the voir dire examination, appellee renewed, and the trial court granted, the motion *in limine* to bar Miller from testifying as an expert. Absent Miller's testimony, appellant's case was unable to withstand appellee's motion for a directed verdict.

On appeal, appellant does not claim that the trial court erred in granting a directed verdict to appellee. Appellant's only assignment is that the trial court abused its discretion in excluding Miller's testimony as an expert witness.[3]

The issue to be decided in this assignment of error is whether the trial court abused its discretion in excluding Miller as an expert witness. (Appellee conducted a lengthy voir dire of Miller in which it examined his expert qualifications.)

A review of Miller's voir dire testimony reveals that Miller had a Bachelor's Degree in Industrial Management and a Master's Degree in Business Administration. In addition, he possessed an Associate Degree in Mechanical Engineering Technology in conjunction with having taken a substantial number of physics courses. Miller had not, however, studied any courses directly related to either the crashworthiness of motor vehicles, occupant protection in automobile accidents, or automotive design. Miller admitted that he had never taught any specific courses on either automotive design or the crashworthiness of vehicles in accidents, nor had he published any papers on the subjects of biomechanics, occupant protection in motor vehicle accidents, or the crashworthiness of motor vehicles.

Miller's employment experience consisted of two periods with International Harvester from 1962 until 1967, and again from 1971 until 1982. From 1967 until 1971, Miller was employed by the Dana Corporation where he worked on motor vehicle axles and marine drives and clutches. When he returned to International Harvester in 1971, Miller was involved with the company's vehicle dynamics group which was primarily concerned with the ride-handling, noise levels and vibrations of International Harvester vehicles. Miller's areas of emphasis were sound and energy, *i.e.,* noise levels and fuel economy. During his employment with International Harvester, Miller never worked with the company's safety group and was never directly involved in a project to determine the ability of a vehicle's front structure to resist intrusion during a frontal collision. Miller testified that during his time at International Harvester, the company planned, but never produced, a closed-body, for-

---

dismissed with prejudice. Appellant settled his claim against McKay and McKay was subsequently dismissed as a party defendant, leaving appellee as the sole remaining defendant.

[3] Appellant did file a second assignment of error which claimed that the trial court erred in applying comparative negligence in a strict products liability case involving an enhanced injury. This assignment was not argued since appellant failed to provide sufficient prima facie proof of a defective product design and it was unnecessary for the court to consider the relationship of comparative negligence to strict liability.

ward-controlled vehicle called the "Metro." Miller, however, was never directly involved in any analysis or determination of the vehicle's ability to withstand any intrusion in the event of a frontal collision.

Miller explained that after he left International Harvester, he worked on some projects for insurance companies to determine the occupant kinematics of passengers in frontal collisions and to determine if vehicles were designed to provide protection to occupants in a frontal collision. Miller was also involved in some projects to determine the strength and performance of vehicle doors and door latches in a frontal collision. Aside from Miller's "present project," involving a Ford van, he was never involved with any projects to determine the strength and performance of vehicle A-pillars in frontal collisions.

When asked about his professional experience with vans, Miller stated that aside from his "present project" involving the Ford van, and his general evaluation of International Harvester's van concept, his experience was severely limited. Miller had no professional dealings with Volkswagen vans other than his own personal operation of those vans. Miller stated that over the last fifteen to twenty years he had driven vans made by most vehicle manufacturers and had examined the configuration of the occupant position relative to the major masses and vehicle frontal area. He admitted, however, that his work in this area was done only for his own personal interest. He also admitted that he was never directly involved with any project to determine and study a vehicle design allowing for controlled deformation in a frontal collision.

Miller professed no background in the areas of anatomy, physiology, or human injury tolerance. He had never made any studies regarding motor vehicle accidents and occupant injuries, nor could he quantify the amount of force needed to be applied to the human body in order to produce specific injuries, especially to the average male femur, tibia or fibula. Miller was not a member of the Society of Automotive Engineers or a member of that organization's Occupant Protection Committee. His only publications in engineer trade magazines dealt with the subjects of fuel economy and vehicle noise and vibrations. Miller also admitted that he had not conducted any specific tests to prove whatever opinions he was prepared to offer during his testimony.

After the court granted appellee's motion and excluded Miller's testimony, appellant proffered the essence of Miller's testimony, stating that had Miller been permitted to testify, he would have identified the following three design defects in the 1961 Volkswagen Transporter: insufficient strength in the front portion of the vehicle, a defect in the door post which gave no stability, and a defect in the vehicle's interior design. Miller also would have testified that these three defects would have enhanced or increased appellant's injuries in the accident with McKay.

Under Evid. R. 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." This rule provides that an expert witness may testify if his opinion or testimony will aid the trier of fact in search of the truth. See *South Union, Ltd.* v. *George Parker & Assoc., AIA, Inc.* (1985), 29 Ohio App. 3d 197, 203, 29 OBR 241, 248, 504 N.E. 2d 1131, 1138. While Evid. R. 702 permits expert testimony, a threshold

determination must first be made under Evid. R. 104(A) concerning the qualification of an individual to testify as an expert witness. Accordingly, all preliminary questions concerning the qualifications of persons to be witnesses are to be determined by the trial court. *Wagenheim* v. *Alexander Grant & Co.* (1983), 19 Ohio App. 3d 7, 19 OBR 71, 482 N.E. 2d 955, paragraph fifteen of the syllabus. Thus, the initial qualification or competency of a witness to testify as an expert or to give his opinions on a particular subject rests with the trial court. *Fulton* v. *Aszman* (1982), 4 Ohio App. 3d 64, 4 OBR 114, 446 N.E. 2d 803, paragraph one of the syllabus; *Shackelford* v. *Cortec, Inc.* (1982), 8 Ohio App. 3d 418, 419, 8 OBR 542, 542-543, 457 N.E. 2d 876, 877; *South Union, Ltd.* v. *George Parker & Assoc., supra; Wagenheim* v. *Alexander Grant & Co., supra.* On appeal, the trial court's ruling with respect to a witness's qualifications as an expert will not ordinarily be reversed unless there is a clear showing that the court abused its discretion. *Id.*

Appellant's case was one for strict liability in tort, primarily directed towards the crashworthiness of the Volkswagen vehicle and its alleged design defect which enhanced or increased appellant's injuries. In order to recover under a cause of action for damages for injuries "enhanced" by a product's design defect, the complaining party must prove that the enhancement of injuries was proximately caused by a defective product which was unreasonably dangerous and injured the party during the course of a foreseeable use. *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, 21 O.O. 3d 285, 424 N.E. 2d 568. A review of Miller's voir dire testimony indicates a significant lack of any educational, employment or professional experience with respect to design defects in forward control

vehicles, especially Volkswagen vans. While Miller may have experienced some peripheral exposure to the subject, it is readily apparent that there was a significant question as to whether he possessed superior knowledge, not possessed by ordinary jurors, which would have entitled him to testify as an expert. See *State Auto. Mut. Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 159-162, 65 O.O. 2d 374, 378-380, 304 N.E. 2d 891, 896-898; and *McQueen* v. *Goldey* (1984), 20 Ohio App. 3d 41, 47-48, 20 OBR 44, 49-51, 484 N.E. 2d 712, 719-720.

It has been previously held that an expert witness is not required to be the best witness on a particular subject. *South Union, Ltd.* v. *George Parker & Assoc., supra.* Even so, our standard of review is one of an abuse of discretion, and before reversing we must find that the trial court's decision prohibiting Miller from testifying as an expert was unreasonable, arbitrary or unconscionable. *McQueen* v. *Goldey, supra,* at 48, 20 OBR at 50-51, 484 N.E. 2d at 720. The fact that we may have reached a different conclusion than that of the trial court does not establish an abuse of discretion. *Cox* v. *Fisher Fazio Foods, Inc.* (1984), 13 Ohio App. 3d 336, 337, 13 OBR 414, 416, 469 N.E. 2d 1055, 1057. Admittedly, it was not an easy decision for the trial court in determining whether Miller qualified as an expert. However, having reviewed the record, we are convinced that the trial court did not act in such an unreasonable, arbitrary or unconscionable manner as to amount to an abuse of discretion. Accordingly, appellant's assignment of error is not well-taken and is overruled.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment

or final order herein appealed from be, and the same hereby is, affirmed.

*Judgment affirmed.*

JONES, P.J., KOEHLER and YOUNG, JJ., concur.