The STATE of Ohio, Appellee,

v.

THOMAS, Appellant.

[Cite as *State v. Thomas* (1991), 63 Ohio App.3d 501.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–547.

Decided June 11, 1991.

*Michael Miller*, Prosecuting Attorney, and *Alan C. Travis*, for appellee.

*Vivyan, Graeff & Schumacher* and *David J. Graeff*, for appellant.

---

BOWMAN, Presiding Judge.

On October 27, 1988, appellant, Keith D. Thomas, was indicted on multiple counts regarding two separate incidents. The first incident was the kidnapping and rape of Shyra Holden on October 3 and 4, and the second incident was the kidnapping, rape, felonious assault and aggravated robbery of Kenyonia Mickqen on December 8, 1988. The indictment also contained a specification that appellant caused physical harm to Mickqen. The cases were consolidated for trial; however, before the jury trial commenced, a pretrial hearing was held regarding a motion to suppress identification of a photo array and a motion to suppress testimony regarding deoxyribonucleic acid ("DNA") testing. At the hearing, the trial court ruled that it would admit the DNA testimony because it found the testimony to be reliable, probative and scientifically acceptable.

At trial, Sylvia Acton, a criminalist for the city of Columbus in the Columbus Police Crime Lab, testified that she shipped the evidence with regard to these two incidents to Cellmark Diagnostics in Maryland for DNA analysis. Julie Light, a molecular biologist for Cellmark, testified that she received a blood tube labeled Kenyonia Mickqen, a blood tube labeled Michael Berry, a blood tube labeled Keith Thomas, a piece of evidence which had blood from Shyra Holden, vaginal swabs labeled Shyra Holden, a section of paisley shorts that belonged to Holden, and clippings from a pair of underwear that belonged to Mickqen. She also explained the process by which DNA was extracted from these samples and how the DNA was analyzed. Dr. Lisa Forman, a research scientist for Cellmark, explained the composition of DNA and how it is used to make identifications. She then interpreted the results of the tests run on the different evidence and opined that the DNA extracted from Holden's paisley shorts and Mickqen's underwear matched the DNA which was extracted from the blood sample provided by appellant.

Appellant was convicted of one count of kidnapping and four counts of rape with respect to Holden and with one count of rape, one count of kidnapping, two counts of felonious assault, and one count of aggravated robbery with respect to Mickqen. Appellant now brings this appeal and asserts the following assignments of error:

"(a) Prejudicial error occurs when the trial court allows DNA test results to be admitted into evidence in a jury trial when there is no testimony to legally establish that the witness is an expert in the field.

"(b) The accused is denied the right to a fair trial and due process when DNA test results are admitted at trial without a proper foundation to demonstrate that the results are based on a reasonable degree of scientific certainty; and that the evidence is accepted as reliable in its particular scientific field."

■ In his first assignment of error, appellant asserts that the trial court erred in admitting evidence of the DNA test results when there was no testimony to establish that Dr. Forman was an expert in the field.

■ An expert witness is one who testifies concerning matters of scientific, mechanical, professional or other like nature, which requires special study, experience, or observation not within the common knowledge of laymen. *Landskroner v. Pub. Util. Comm.* (1983), 5 Ohio St.3d 96, 5 OBR 176, 449 N.E.2d 760. The qualification of an individual as an expert is a matter for determination by the trial court on the facts, and rulings with respect to such matters will not be reversed on appeal unless there is a clear showing that the trial court abused its discretion. *State v. Maupin* (1975), 42 Ohio St.2d 473, 71 O.O.2d 485, 330 N.E.2d 708. See, also, *Frank v. Vulcan Materials Co.* (1988), 55 Ohio App.3d 153, 563 N.E.2d 339. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144. See, also, *Kitchens v. McKay* (1987), 38 Ohio App.3d 165, 528 N.E.2d 603.

In this case, Dr. Forman testified that she had a Bachelor of Science degree from the University of California at Berkeley and that she had a Master of Science degree and a Ph.D. in anthropology from New York University. Since obtaining her Ph.D., she received post-doctorate training in molecular biology, population genetics at the National Cancer Institute. She also received post-doctorate positions and funding from the Smithsonian Institution, and she worked for the National Zoology Park developing genetic profiles on some of the rare and endangered species at the National Zoo. Dr. Forman had published approximately seventy-five abstracts (synopses of papers that she had presented at professional meetings) and nine full manuscripts. She also is a member of the American Association for the Advancement of Sciences, the American Society of Mammalogists and the International Primatological Society. Dr. Forman testified that she had been qualified as an expert in the field of population genetics about twenty-five times and had testified all over the country on this subject for both the prosecution and the defense.

Based on this background and experience, this court cannot say that the trial court abused its discretion in determining that Dr. Forman was an expert qualified to testify about DNA testing and DNA identifications. Further-

more, appellant did not object to Dr. Forman being qualified as an expert, nor did he request to conduct a *voir dire* of Dr. Forman on her qualifications. Appellant's only objection came when Dr. Forman gave her opinion that appellant's DNA matched the DNA extracted from the paisley shorts and the underwear. Because the trial court did not abuse its discretion in determining that Dr. Forman was an expert, appellant's first assignment of error is not well taken.

In his second assignment of error, appellant asserts that the trial court erred when it admitted the DNA test results because they were admitted without a proper foundation. Appellant asserts that, because there was no testimony to properly lay a foundation to show that DNA identification is acceptable and reliable in the scientific community, this evidence should not have been admitted.

In this case, the trial court held a pretrial hearing to determine whether the expert testimony on DNA identification was admissible. After listening to Dr. Forman explain all of the procedures, the tests and the safeguards, the trial court found that the testimony was reliable, probative and scientifically acceptable.

At trial, Dr. Forman reiterated her testimony from the pretrial hearing and explained the checks and safeguards that are used to ensure the validity and reliability of the DNA test results. Appellant rebutted this testimony by questioning Dr. Forman about a commentary by Dr. Eric Lander, a professor at Whitehead Institute, entitled "DNA fingergprinting on trial," wherein Dr. Lander opined that the scientific community failed to set rigorous standards for DNA testing to which courts, attorneys and forensic laboratories can look for guidance.

Dr. Forman testified that there are standards for conducting autoradiograms which have been in place since 1975. In addition, there are guidelines for procedures and standards in the scientific community at large which allow researchers to obtain reliable, reproducible results.

In *State v. Williams* (1983), 4 Ohio St.3d 53, 58, 4 OBR 144, 148, 446 N.E.2d 444, 448, the court stated:

" * * * [W]e refuse to engage in scientific nosecounting for the purpose of deciding whether evidence based on newly ascertained or applied scientific principles is admissible. We believe the Rules of Evidence establish adequate preconditions for admissibility of expert testimony, and we leave to the discretion of this state's judiciary, on a case by case basis, to decide whether the questioned testimony is relevant and will assist the trier of fact to understand the evidence or to determine a fact in issue."

The admissibility of scientific evidence in Ohio is governed by Evid.R. 402, 403 and 702. *Williams, supra.* In *State v. Pierce* (July 9, 1990), Delaware App.No. 89–CA–30, unreported, 1990 WL 97596, [1] the court stated that it was satisfied, given the appropriate foundation and compliance with acceptable standards, that DNA testimony of both inclusion and exclusion is admissible pursuant to Evid.R. 702. In *State v. Lee* (Dec. 5, 1990), Lorain App.No. 90CA004741, unreported, 1990 WL 197975, the court stated that the decision in *Pierce, supra,* was in accord with those of other jurisdictions that have considered the admissibility of forensic DNA analysis and that the underlying theory of DNA analysis is generally accepted by both the scientific community and the courts.

This court finds that the trial court did not err in admitting the evidence of the DNA testing and DNA identifications by finding the evidence to be reliable, scientific evidence. The evidence was relevant to the issue of the identity of Holden and Mickqen's attacker, and it assisted the jury in making that determination. Thus, this court finds no merit to appellant's contention that the DNA analysis was unreliable and should have been excluded. Appellant's second assignment of error is not well taken.

Based on the foregoing, appellant's two assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and JOHN C. YOUNG, JJ., concur.

---

1. This case is currently pending in the Supreme Court of Ohio, case No. 90–1898.