OPINION
Appellant, John Frank, appeals from a judgment by the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of his children, Bradley and Brittany Parker, to Clermont County Department of Human Services ("CCDHS"). We affirm the decision of the trial court.
On August 5, 1996, CCDHS filed a complaint in juvenile court, alleging that Bradley (DOB 7/24/92) and Brittany (DOB 2/15/96) were neglected children. Bradley and Brittany are the children of appellant and Robin Parker and were in their care at the time the complaint was filed. The complaint alleged that the parents had neglected their children. When interviewed about the allegations, appellant appeared to be under the influence of drugs and Robin smelled strongly of alcohol. Appellant and Robin are not married to each other. Bradley and Brittany were placed with their paternal grandparents in September 1996. On October 17, 1996, Bradley and Brittany were adjudicated dependent children. They were placed in the temporary custody of CCDHS and were allowed to remain with their grandparents. After their paternal grandmother passed away in May 1997, the children were temporarily placed with their paternal aunt and uncle. Subsequently, Bradley and Brittany were placed with a foster family on December 15, 1997.
On January 25, 1998, CCDHS filed a motion for permanent custody of Bradley and Brittany. A hearing was held before a magistrate on June 16, 1998 and August 13, 1998. The magistrate granted the motion for permanent custody as evidenced by an entry filed on September 24, 1998. Appellant and Robin Parker filed objections to the magistrate's decision. On January 15, 1999, a trial court judge filed an entry overruling the objections and affirming the magistrate's decision. Appellant subsequently filed this appeal, raising five assignments of error for our review. Robin Parker did not participate in this appeal.
Because the issues raised in the first two assignments of error address the findings that the trial court was required to make in order to grant the permanent custody award, they will be considered together.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FINDING THAT THE APPELLANT'S CHILDREN COULD NOT BE PLACED BACK WITH EITHER PARENT WITHIN A REASONABLE PERIOD OF TIME, WHEN SUCH A FINDING WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AT TRIAL.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED WHEN IT PERMANENTLY TERMINATED APPELLANT'S PARENTAL RIGHTS WHEN THE STATE FAILED TO PRESENT CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE BEST INTEREST OF THE CHILDREN TO GRANT PERMANENT CUSTODY TO THE DEPARTMENT OF CHILDREN'S SERVICES.
In his first two assignments of error, appellant argues that the trial court's findings that Bradley and Brittany could not be placed with either parent within a reasonable amount of time and that it was in the best interest of the children to grant permanent custody to CCDHS were not supported by clear and convincing evidence.
Natural parents have a constitutionally protected interest in the care and custody of their children. Santosky v. Kramer
(1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394-1395. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id.
at 759, 102 S.Ct. at 1397. Therefore, due process requires that the state prove by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. When deciding a permanent custody case, the trial court is required to make specific statutory findings; the reviewing court must determine whether the trial court either followed the statutory factors in making its decision or abused its discretion by deviating from the statutory factors. See In re William S. (1996), 75 Ohio St.3d 95.
A juvenile court shall grant permanent custody to an agency if the court finds, by clear and convincing evidence, that the best interest of the child warrants a grant of permanent custody and that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.41.4(B)(1);[1] In re Egbert Children (1994), 99 Ohio App.3d 492,495.
When determining whether it would be in the best interest of a child to grant permanent custody of the child to an agency, pursuant to pre-amendment R.C. 2151.41.4(D), a juvenile court should consider all relevant factors, which include but are not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
In this case, the trial court found that it would be in the best interest of the children to award permanent custody to CCDHS. The state presented evidence showing that the children had developed a close bond to their foster family.
Dr. James Dalton, a clinical child psychologist, testified that Bradley has bonded with his foster parents and benefits from the predictability, security, support, and love that they provide. Dr. Dalton stated that Bradley needs permanency and that if Bradley were moved again, he would regress. A caseworker testified that "the children are doing really well" in foster care. A supervisor from CCDHS stated that if permanent custody was granted, the children would be adopted by their foster parents.
There was also testimony that appellant shared a bond with his children. Charles Bleekmore, appellant's counselor, observed a visitation between appellant and his children and testified that the interaction was positive and that appellant displayed mature parenting skills. The guardian ad litem stated that Bradley and Brittany expressed love for their parents. However, the guardianad litem doubted whether the parents could provide a secure home for their children. The children had not been in the care of either of their parents for a significant period of time. When originally placed in the custody of CCDHS, Bradley was four years old and Brittany was five months old; at the time of the permanent custody hearings, Bradley was six years old and Brittany was two years old. Robin had not seen the children since August 1997, about one year before the permanent custody hearing was held.
The trial court determined that granting permanent custody would serve the best interest of the children. We find that there is clear and convincing evidence to support the trial court's finding.
In addition to determining a child's best interest, the juvenile court must determine whether the child can be placed with a parent within a reasonable time. R.C. 2151.41.4(B)(1). The court shall enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in pre-amendment R.C. 2151.41.4(E) apply, including the following:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code;
* * *
 (4) The parent has demonstrated a lack of commitment toward the child be failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
(12) Any other factor the court considers relevant.
The trial court found that Bradley and Brittany could not be placed with Robin Parker or appellant within a reasonable time. Robin Parker did not appeal from the trial court's decision, even though her parental rights were terminated. Robin was incarcerated from August 1997 until April 1998. She failed to fulfill her child support obligation. A caseworker with CCDHS described Robin's participation in the case plan as "minimally compliant" and indicated that Robin had failed to complete the case plan requisite services within twenty-two months. Robin was living with her mother at the time of the permanent custody hearing but had begun a new job and had made arrangements to move into a three-bedroom home on her own. Although Robin's mother and sister testified that Robin is trying to turn her life around, Robin admitted that she has an addiction and could relapse at any time.
The testimony regarding appellant revealed that he continued to use drugs even after the children were removed from his custody. While working on the CCDHS case plan, appellant failed two of his nine drug screens. On November 10, 1997 and again on January 7, 1998, appellant tested positive for cocaine and claimed that he "just slipped up." Appellant tested positive for cocaine during the time that he was responsible for transporting his children to day care. Appellant cancelled or was significantly late to several scheduled visitations with his children. Appellant failed to make child support payments and accumulated an arrearage of over $10,000. At the conclusion of the permanent custody hearing, appellant had only paid $3,000 toward his child support obligation.
Appellant's father, Carl Frederick Frank, testified on his son's behalf, insisting that appellant has now straightened out his life and is faithfully attending Alcoholics Anonymous ("AA") meetings. At the time of his testimony, appellant was still living with his father and had only occasionally paid the utility bill or the mortgage payment. When asked whether appellant was ready to take the children back in his care, Carl Frank admitted that his son needed more time. Carl Frank stated, "[h]e has to prove that he can handle hisself [sic] for about another year, I would say. I love my son. And I'm willing — kick this habit — I love you, too, Robin, and it's just not good. Forgive me."
Reverend Kevin Shield, who is employed as a counselor at Mary Haven Institute, testified that he has maintained contact with appellant during the year following appellant's completion of the program. Reverend Shield stated that appellant is serious about his recovery. Chris Tarnowieckyi, one of appellant's AA sponsors, said that appellant is enthusiastic about staying sober. Appellant's counselor, Charles Bleekmore, also testified that he has observed a significant change in appellant's behavior and that appellant has been attending AA and Narcotics Anonymous ("NA"). Bleekmore also provided appellant with parenting classes.
The children have not been in the care of appellant or Robin Parker since August 1996. Appellant testified that his "sobriety date" was February 26, 1998, and he presented evidence of his frequent attendance at AA and NA meetings. Although there was testimony that appellant has changed his ways, there was also testimony that appellant has established a pattern of completing a treatment program and then "slipping up." The guardian ad litem
recommended that permanent custody of the children be granted to CCDHS because the children needed stability and predictability, which their parents had not proven that they could provide.
The magistrate found that the children could not be placed with either parent within a reasonable time. The magistrate's decision acknowledged the following: "Although the parents' efforts at recovery are admirable they are still only in a position of providing a possibility of stability and permanency. A legally secure placement can be achieved by granting permanent custody to the Agency." We find that there was clear and convincing evidence to support the trial court's determination that the children could not be placed with either parent within a reasonable time.
We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.41.4 and that these findings are supported by clear and convincing evidence. Therefore, appellant's first and second assignments of error are overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY ALLOWING DR. JAMES DALTON TO TESTIFY ABOUT MATTERS OUTSIDE THE KNOWLEDGE OF LAY PERSONS WHEN HE WAS NEVER PROPERLY QUALIFIED AS AN EXPERT.
In this assignment of error, appellant argues that it was inappropriate for Dr. James Dalton to give expert testimony when he was not qualified as an expert as required by the Rules of Evidence. Evid.R. 702, which governs expert testimony, states in relevant part:
 A witness may testify as an expert if all of the following apply:
 (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.
An appellate court will not ordinarily reverse a trial court's ruling with respect to a witness's qualifications as an expert unless there is a clear showing that the trial court abused its discretion. Kitchens v. McKay (1987), 38 Ohio App.3d 165,169, citing Fulton v. Aszman (1982), 8 Ohio App.3d 64 [4 Ohio App.3d 64]. An abuse of discretion implies that the trial court's decision was unreasonable, unconscionable, or arbitrary. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Appellant did not object to Dr. Dalton's qualifications during Dr. Dalton's testimony. Instead, appellant waited until closing argument to make any objection and filed a written objection after the trial. If appellant had timely objected during Dr. Dalton's testimony, the state could have questioned the doctor further about his educational background and any specialized training. However, appellant failed to object to Dr. Dalton's expert testimony while the doctor was on the witness stand, and appellant's counsel cross-examined Dr. Dalton.
Because appellant did not timely object to Dr. Dalton's testimony, his assignment of error must be addressed using a plain error analysis. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The purpose of the plain error rule is to insure that a defendant has a fair trial despite the fact that he failed to object to error at trial. State v.Wolery (1976), 46 Ohio St.2d 316, 327.
In order to find plain error, it must appear on the face of the record that the error was committed and that, but for the error, the result of the trial clearly would have been otherwise so that to not consider the error would result in a clear miscarriage of justice. State v. Williford (1990), 49 Ohio St.3d 247,252, citing State v. Cooperrider (1983), 4 Ohio St.3d 226,227. An appellate court is to acknowledge plain error only "under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, syllabus.
Dr. Dalton testified that he was a clinical child psychologist. He stated that he has been employed by Children's Hospital in Columbus, Ohio, for approximately two years. Dr. Dalton explained that he specializes in younger aged children with behavioral disorders, and has probably worked with about one hundred such children in the last two years. Dr. Dalton had met with Bradley on several occasions. He diagnosed Bradley with a "neurologically based disorder" and recommended follow-up care, which included medication.
During cross-examination of Dr. Dalton by Robin Parker's counsel, Dr. Dalton was asked whether adopted children, later in life, continue to suffer emotional problems. The state objected to this question and the trial court responded, "I think we've assumed that the Doctor is qualified to testify here. Whether the foundation has been laid to have him render an opinion on that question is another matter. If you would like to do so I would be happy to permit the question but I think it's going to take some foundation with respect to his training and experience before we can get to do that based on what we heard so far." After this instruction, Robin's counsel asked questions to establish the depth of Dr. Dalton's experience with counseling children who have been adopted, and the disputed question was then asked and answered without objection.
Reviewing the record, we agree that the state should have more thoroughly laid the foundation for Dr. Dalton's expert testimony by inquiring about his education and specialized training. There is no mention of Dr. Dalton's educational background in the trial transcript, nor is his curriculum vitae provided as an exhibit. However, Dr. Dalton has been employed by a hospital in Columbus, Ohio as a children's clinical psychologist; apparently, he has received the educational training necessary to hold such a position. Under a plain error analysis, we find that the record fails to show that Dr. Dalton lacked the qualifications necessary to give expert testimony, or that his testimony was improperly admitted or resulted in a clear miscarriage of justice. Therefore, we overrule appellant's third assignment of error.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FAILING TO RENDER ITS DECISION WITHIN SEVEN DAYS OF THE HEARING.
In his fourth assignment of error, appellant claims that the judgment of the trial court must be vacated because the trial court did not enter a judgment within seven days of the conclusion of the permanent custody hearing, as required by Juv.R. 34.
Juv.R. 34(C), which pertains to dispositional hearings of children who have been adjudicated abused, neglected, or dependent, states the following: "After the conclusion of the hearing the court shall enter an appropriate judgment within seven days." Similarly, R.C. 2151.35(B)(3), which establishes the procedure for dispositional hearings for children adjudicated abused, neglected, or dependent, states the following: "After the conclusion of the dispositional hearing, the court shall enter an appropriate judgment within seven days * * *." Pre-amendment R.C. 2151.41.4,[2] which pertains solely to permanent custody hearings, does not set parameters for how quickly the trial court must issue its decision, but states that "[t]he court shall conduct a hearing in accordance with section 2151.35 of the Revised Code * * *." R.C. 2151.41.4(A)(1).
Recently the Supreme Court of Ohio held that the seven-day time limit under R.C. 2151.35 applies to permanent custody proceedings under pre-amendment R.C. 2151.41.4, but that this limit is directory, not mandatory. In re Davis (1999), 84 Ohio St.3d 520,522-523. A juvenile court is not deprived of its jurisdiction by failure to comply with this time limit. Id. When a juvenile court delays its ruling beyond the seven days provided by the R.C. 2151.35, the proper remedy is to file a petition for a writ of procedendo. Id. at 523. A petition for a writ of procedendo "is appropriate when a court has either refused to render a judgment or has unnecessarily delayed proceeding to judgment." Id., quoting State ex rel. Miley v. Parrott (1996),77 Ohio St.3d 64, 65.
Because the seven-day time limit for making permanent custody determinations is directory, not mandatory, the juvenile court was not deprived of its jurisdiction over this case and its judgment is valid. Appellant's fourth assignment of error is overruled.
Assignment of Error No. 5:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY RENDERING A DECISION TO TERMINATE APPELLANT'S PARENTAL RIGHTS WHEN THE TRIAL COURT WAS WITHOUT JURISDICTION TO MAKE SUCH A DECISION.
In his final assignment of error, appellant argues that in order for a trial court to assert jurisdiction over a permanent custody case, it must re-adjudicate the original finding of dependency, neglect, or abuse. Appellant contends that due process entitled him to a de novo challenge of the October 17, 1996 adjudication of dependency at the permanent custody trial. Appellant asserts that he would more vigorously defend against the allegations of the 1996 complaint now, when faced with the possibility of permanently losing all parental rights, than he did previously, when CCDHS merely sought temporary custody.
Pre-amendment R.C. 2151.41.4(A), which pertains to permanent custody hearings, states that "[t]he adjudication that the child is an abused, neglected, or dependent child and the grant of temporary custody to the agency that filed the motion or placement into long-term foster care shall not be readjudicated at the [permanent custody] hearing and shall not be affected by a denial of the motion for permanent custody." R.C. 2151.41.4(A)(1) and the doctrine of res judicata bar a second adjudication of this issue. Appellant's final assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
 JUDGMENT ENTRY
The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, affirmed.
It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas, Juvenile Division, for execution upon this judgment and that a certified copy of this Judgment Entry shall constitute the mandate pursuant to App.R. 27.
Costs to be taxed in compliance with App.R. 24.
 _____________________________________ William W. Young, Presiding Judge
 _____________________________________ James E. Walsh, Judge
 _____________________________________ Anthony Valen, Judge
[1] R.C. 2151.41.4 was amended on March 18, 1999. The amended version does not apply to the case sub judice because it was enacted after the permanent custody hearing was held.
[2] The amended version of R.C. 2151.41.4 states in relevant part:
 The court shall issue an order that grants, denies, or otherwise disposes of the motion for permanent custody, and journalize the order, not later than two hundred days after the agency files the motion. * * * The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court.
R.C. 2151.41.4(A)(2). However, as previously mentioned, because this amendment was enacted after the permanent custody hearing was held, it is not applicable to this case.