JOURNAL ENTRY and OPINION
{¶ 1} Wajid Abdussatar appeals his convictions for rape and kidnapping. Abdussatar assigns the following errors for our review:
"I. The trial court erred in admitting evidence of a letter that was inadmissible hearsay within Ohio Rule of Evidence 803(4). Thereby denying appellant a fair trial." [sic]
"II. The Appellant was denied effective assistance of counsel, in that counsel's representation was unconstitutionally deficient during voir dire and trial."
"III. The jurors [sic] verdicts for kidnapping and rape were against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Abdussatar's convictions. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Abdussatar on one count each for rape, kidnapping, with a sexual motivation specification attached, and aggravated burglary. Abdussatar entered a plea of not guilty; a jury trial ensued.
 {¶ 4} The evidence revealed that in June 2003, the thirteen-year old, developmentally-delayed victim, was staying at her aunt's house located on East 93rd and Heath in Cleveland, Ohio. Everyone in the house was sleeping when twenty-three year old Abdussatar knocked on the door looking for the victim's twenty-seven year old cousin, Robert. Although Abdussatar was a frequent visitor to the home, the victim did not know him because she did not live at the house. The victim went upstairs to try and wake Robert. Robert told the victim to tell Abdussatar he would be down in a minute; however, he went back to sleep. When the victim returned downstairs, Abdussatar was in the hallway, although the victim had left him waiting outside. He asked the victim to again wake Robert. The victim again attempted to wake her cousin to no avail. When she returned, Abdussatar was in the living room.
 {¶ 5} Abdussatar then removed tape from his pocket and placed it over the victim's mouth. He led her into the kitchen where he wet his hands. He then took the victim back to the living room and pulled her pants and underwear off and placed his wet hand inside her vagina. Abdussatar then put a condom on and had intercourse with the victim. Through the tape over her mouth, the victim told Abdussatar "no" several times and attempted to get up off the floor. However, he forcefully held her down.
 {¶ 6} Afterwards, Abdussatar pulled his pants up, took the tape off the victim's mouth, walked outside, and inquired whether the victim wanted a cigarette. The victim went back inside the house and locked the door.
 {¶ 7} Although the victim stayed at her aunt's house until the next morning, she did not tell anyone what happened because she was scared. The next day, the victim returned to her house on the west side of Cleveland. A friend, who was also developmentally delayed, came to her house for a sleep-over. The victim told her friend about the rape. The victim then dictated a letter to her friend detailing the date and incident of the rape. The letter was created because the victim knew at some point she would tell someone about the rape and wanted to remember the events correctly.
 {¶ 8} In November 2003, the victim found the letter under her bed and took it to school. The victim showed the letter to a classmate. The classmate gave the letter to the victim's teacher. After confirming with the victim that the events in the letter actually happened, the teacher called the child abuse hotline.
 {¶ 9} When first contacted by social worker Lisa Prokopius, the victim denied the rape occurred. It was not until Christmas Eve that the victim told her mother about the rape. At that time, the mother contacted Cleveland Police. The victim was able to provide Abdussatar's first name to police and identified him from a photo array.
 {¶ 10} The jury found Abdussatar guilty of rape and kidnapping, but not guilty of aggravated burglary. The trial court sentenced Abdussatar to eight years on each count to be served concurrently.
 HEARSAY EVIDENCE {¶ 11} In his first assigned error, Abdussatar contends the trial court erred when it allowed into evidence, hearsay evidence in the form of a letter written by the victim.
 {¶ 12} Generally, the admission or exclusion of relevant evidence rests within the sound discretion of the trial court and its decision to admit or exclude such evidence will not be disturbed absent an abuse of that discretion.[1] However, while the trial court has discretion to admit or exclude relevant evidence, it has no discretion to admit hearsay; Evid.R. 802 mandates the exclusion of hearsay unless any exceptions apply. Thus, we review de novo the trial court's decision regarding whether a statement is hearsay or non-hearsay under Evid.R. 801.[2]
 {¶ 13} Evid.R. 801(D) provides in pertinent part:
"(D) Statements which are not hearsay. A statement is not hearsay if:
"(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * (b) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, * * *."
 {¶ 14} In the instant case, Abdussatar's counsel in his opening statement stated that the victim fabricated the rape. Specifically, he stated as follows:
"The evidence I want you to focus on is what I believe is the most important evidence in this case. The tale a little girl will tell. And we all know children can lie. And it doesn't matter how many people come in here and repeat the same story. * * *"[3]
 {¶ 15} Attacking a victim's credibility during opening statement has been found to constitute sufficient grounds for permitting a prior consistent statement into evidence pursuant to Evid.R. 801(D)(1)(b).[4] Therefore, because defense counsel contended the victim fabricated the rape, and because the victim testified and was subject to cross-examination, the trial court did not err by allowing the letter to be admitted into evidence. Accordingly, Abdussatar's first assigned error is overruled.
 INEFFECTIVE ASSISTANCE OF COUNSEL {¶ 16} In his second assigned error, Abdussatar argues he did not receive effective assistance of counsel during voir dire, opening argument, and cross-examination of Detective Hussein. We disagree.
 {¶ 17} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v.Washington.[5] Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[6] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[7] Judicial scrutiny of a lawyer's performance must be highly deferential.[8]
 {¶ 18} Abdussatar contends his counsel was ineffective for not removing two jurors from the jury. The first juror was a woman who stated as a mother of three daughters she was not confident that she could be unbiased in a rape case. Our review of the record indicates that defense counsel exercised one of his peremptory challenges to remove this woman from the jury.[9] Therefore, no ineffective assistance of counsel occurred as to this juror.
 {¶ 19} The second juror was a man whose daughter was raped and murdered 15 years ago. The man stated in spite of his tragedy, he felt he could be unbiased and apply the law fairly. Specifically, he stated as follows:
"Mr. Rukovena: Sir, have you committed yourself to keeping an open mind and making a decision in this matter, if you're called upon to serve, strictly upon the evidence in the case and the law as the judge explains it?
"Juror: Yes, absolutely.
"Mr. Rukovena: You feel you have your emotions because of your daughter's situation in control?
"Juror: I think I basically do, yes.
"Court: So the evidence would be strictly on the evidence — your decision would be strictly on the evidence and the law?
"Juror: Yes, it would be.
"* * *
"Mr. Hernandez: I'm aware that you'll experience pain. What I want to know from you, is whether or not once Judge Saffold gives you instructions as to the law, and first of all, whether you can keep an open mind in this case until the judge ask you to deliberate?
"Juror: Yes.
"Mr. Hernandez: And can you, once the judge instructs you, can you separate your personal experience from what you've heard in the courtroom?
"Juror: Yes, I think I can.
"Mr. Hernandez: Can you follow Judge Saffold's instructions —
"Juror: Yes.
"Mr. Hernandez: — law and apply it strictly to my client?
"Juror: Yes."[10]
 {¶ 20} Based on the juror's affirmative belief that he could be fair and apply the law in an unbiased way, we cannot conclude counsel was ineffective for not removing this juror.
 {¶ 21} Abdussatar also contends his counsel did not possess a defense strategy as is evident by his rambling opening statement. A review of the record indicates that in his opening statement, counsel set forth the defense that the victim was fabricating the rape. Moreover, we cannot conclude that there is a reasonable probability that, but for defense counsel's opening statement, the result of the proceeding would have been different.[11]
 {¶ 22} Abdussatar also contends counsel was ineffective for failing to cross-examine Detective Hussein regarding inconsistencies between her written report and the victim's statement. Abdussatar does not set forth what the inconsistencies are, and we do not have the written report before us from which we can compare the victim's statement. Without such evidence, we have no way to determine if counsel was ineffective for failing to cross-examine on major inconsistencies. Accordingly, Abdussatar's second assigned error is overruled.
 MANIFEST WEIGHT OF THE EVIDENCEB {¶ 23} In his third assigned error, Abdussatar argues his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 24} When the argument is made that the conviction is against the manifest weight of the evidence, the appellate court is obliged to consider the weight of the evidence, not its mere legal sufficiency. The defendant has a heavy burden in overcoming the fact finder's verdict. As the Ohio Supreme Court held inState v. Thompkins:[12]
"Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Blacks, supra, at 1594.
"* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
 {¶ 25} Abdussatar contends the victim's testimony was not credible because she did not immediately tell anyone about what happened, and there was no physical evidence a rape occurred. Whether the victim was credible or not was an issue for the jury to discern.[13] Although the victim did not immediately tell anyone about the rape, she contended she did not do so because she was scared. She did confide in her best friend the day after the rape, which prompted them to compose the letter regarding what had transpired. It was within the jury's discretion to determine whether the victim, who has an IQ roughly equivalent to a fourth grader, was credible given her failure to reveal the rape until six months after the event.
 {¶ 26} It is true the physician who examined the victim indicated there was no physical evidence of a rape. However, he explained this was not inconsistent with the victim's contention that she was raped. The doctor explained that a single rape would not necessarily leave physiological evidence. According to the doctor, despite popular belief, the hymen only shows signs of sexual intercourse when the intercourse is a "well established pattern of life."[14] Therefore, although the results of the victim's physical exam were normal, this was not inconsistent with her contention she was raped. Thus, even without physical evidence of the rape, the jury could still find Abdussatar guilty based on their determination the victim's testimony was credible. Accordingly, Abdussatar's third assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
McMonagle, J., and Gallagher, P.J., concur.
[1] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of syllabus; State v. Reed (1996), 110 Ohio App.3d 749, 752.
[2] State v. Sorrels (1991), 71 Ohio App.3d 162, 165.
[3] Tr. at 266.
[4] State v. Johnson (Apr. 26, 1996), 2nd Dist. No. 15253; State v. Hoskins (June 28, 1995), 2nd Dist. No. 94-CA-42; Stadler v. Rankin (June 29, 1993), 10th Dist. No. 92AP-1269.
[5] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[6] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[7] Id. at paragraph two of syllabus.
[8] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[9] Tr. at 214.
[10] Tr. at 85-89.
[11] Strickland at 694; Bradley, at paragraph three of the syllabus.
[12] 78 Ohio St.3d 380, 386-387, 1997-Ohio-52.
[13] State v. Thomas (1982), 70 Ohio St.2d 79.
[14] Tr. at 374.