[Cite as *State v. Carnegie*, 2024-Ohio-1892.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 112342 |
| v. | : | |
| TERRANCE CARNEGIE, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 16, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-655958-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher Woodworth, Assistant Prosecuting Attorney, *for appellee*.

Jonathan N. Garver, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1} Now comes defendant-appellant Terrance Carnegie ("Carnegie") who appeals his conviction for domestic violence. For the reasons that follow, we reverse the conviction and remand for further proceedings.

**Factual and Procedural History**

{¶ 2} On April 6, 2021, a grand jury returned an indictment against Carnegie alleging five counts: attempted murder (Count 1); kidnapping (Count 2); felonious assault (Count 3); domestic violence with a furthermore clause that Carnegie knew the victim was pregnant at the time of the violation (pursuant to R.C. 2919.25(D)(5)) (Count 4); and having weapons while under disability (Count 5). All counts included a one-year firearm specification. Counts 1-3 each included a three-year firearm specification, a notice of prior conviction, and a repeat violent offender ("RVO") specification. Count 4 included the three-year firearm specification as well as a pregnant victim specification (pursuant to R.C. 2941.1423).

{¶ 3} Prior to trial, Carnegie signed a jury waiver for Count 5, having weapons while under disability and the RVO and prior conviction specifications. The jury trial commenced on March 28, 2022.

{¶ 4} The testimony established that on October 22, 2020, around 7:30 a.m., Jasmine Payton had just dropped her two kids off at school. She was stopped at a light on East 152d Street; however, when the light turned green, the cars in front of her did not move. At that point, she looked over to a nearby field and saw that a man was chasing a woman and tackled her to the ground. She then observed the woman get up and start running again. When the woman reached the street, she pulled on car doors, trying to get in, while simultaneously yelling that he was going to kill her and that she was pregnant. The woman also yelled that he had a gun, but Payton did not see one. As Payton picked up her phone to call 911, she pulled into a driveway

to turn around, at which point the woman opened the back door, climbed in the car, and yelled at Payton to start driving. Payton told the 911 dispatcher what had happened, and the dispatcher advised her to take the woman to the police station on East 152d Street.

{¶ 5} When they arrived at the station, they met Officer Tyeisha Sain who was working the front desk. The woman, T.B., came into the station looking frantic. T.B. told Officer Sain that she was pregnant and had been assaulted. Body-cam video of the encounter showed T.B. in a seated position while the officer was standing. T.B. was wearing an open shirt with a bra underneath, so that her stomach was visible. Her pregnancy was not visible or obvious from the video.

{¶ 6} T.B. testified at trial. Before her testimony, the state filed a motion to designate T.B. as a court's witness. Once called, T.B. was evasive during her testimony. She alleged that she hit Carnegie first and he slapped her a couple of times. T.B. testified that she was running and fell and that Carnegie helped her up. She acknowledged that a lady she did not know took her to the police station and that she was wearing pajamas when shown images from the body-cam video. She also testified that she went to the hospital because of her fall.

{¶ 7} The court adjourned for the night with the intent to resume T.B.'s testimony in the morning. After listening to the arguments of counsel, considering T.B.'s testimony thus far, and independently reviewing case law, the trial court granted the state's motion to call T.B. as a court's witness. Prior to continuing testimony, the court instructed the jury that T.B. was now a court's witness and

instructed them on the permitted use of prior inconsistent statements. (Tr. 672-674.)

{¶ 8} The state resumed questioning T.B., focusing on a written statement she created shortly after the incident. T.B. acknowledged that in her statement, she wrote that Carnegie tackled her to the ground and tried to take her back home. She also wrote that Carnegie was "bending" her up. T.B. testified she did not know what the term meant but acknowledged that she previously defined the term to mean "choking." T.B. acknowledged that she wrote that she snuck out of the house and locked the door because Carnegie was keeping her there. T.B. further acknowledged that when Carnegie tried to take her back to the house, she grabbed onto the door handle of a truck to prevent him from taking her.

{¶ 9} Denise Robinson, a nurse and the Adult Forensic Coordinator for University Hospitals Medical Center, treated T.B. Robinson coordinated a team of nurses who provide care for patients who are victims of sexual assaults, domestic violence, and other crimes. The state sought to admit T.B.'s medical records, which included Robinson's summary of her interview with T.B. In response to an objection from the defense, the trial court found that statements that were made for diagnosis and treatment were admissible but other statements would be redacted from the record. The defense maintained its objection and specifically objected to Robinson's report. Subsequently, Robinson testified and was asked to read into the record the redacted summary she wrote of the interview. In addition to T.B.'s description of

the assault, Robinson read into the record that T.B. told her that Carnegie said "[h]e didn't want the baby. He was not sure if it was his." (Tr. 930.)[1]

{¶ 10} The jury ultimately found Carnegie guilty of Count 4, domestic violence, and guilty of the associated furthermore clause.[2] The jury found him not guilty of Counts 1 through 3, and the trial court found him not guilty of Count 5, having weapons while under disability. The trial court subsequently imposed a mandatory sentence of six months in prison.[3]

{¶ 11} Carnegie now appeals assigning the following errors for our review:

### Assignment of Error No. 1

The trial court abused its discretion by allowing a nurse to testify to, and admitting into evidence, portions of her narrative report, contained in the alleged victim's medical records, describing matters that were unrelated to medical care and treatment of the alleged victim, including alleged prior bad acts. Evid.R. 803(4), Evid.R. 404(B), and Evid.R. 403(A).

### Assignment of Error No. 2

The trial court abused its discretion by declaring the alleged victim a court's witness during her direct testimony under Evid.R. 614, thereby circumventing Evid.R. 607(A), which prohibits a party from cross-examining its own witness with a prior inconsistent statement unless he can demonstrate surprise and affirmative damage.

---

[1] Although, the trial court did not list this statement as one that needed to be redacted on the record, the statement is redacted from the medical records in state's exhibit No. 13.

[2] Prior to deliberations, the trial court, after discussion with the parties, determined that the furthermore clause would be stated in the verdict form but not the specification.

[3] Carnegie was also sentenced in two other cases for which, including this case, he received an aggregate sentence of four years and six months.

## Assignment of Error No. 3

Appellant was denied due process of law as a result of an improper attempt by the state to introduce evidence of past bad acts including allegations of choking the victim in the past.

## Assignment of Error No. 4

The trial court committed plain error by allowing the state to introduce evidence that the alleged victim's mother had relocated a few days after the alleged occurrence out of concern for the alleged victim's safety. Evid.R. 402, Evid.R. 403.

## Assignment of Error No. 5

There was insufficient evidence to support a guilty verdict on the charge of domestic violence with a pregnant victim specification.

## Assignment of Error No. 6

The guilty verdict for domestic violence with a pregnant victim specification is against the manifest weight of the evidence.

## Law and Analysis

{¶ 12} In the first assignment of error, Carnegie challenges the admission of medical records and the testimony of Denise Robinson. Carnegie argues that certain statements that remained in the medical records after redaction were unrelated to treatment and were inadmissible under Evid.R. 803(4). Therefore, he alleges that Robinson should not have been permitted to introduce statements from her report into the record during her testimony. He further challenges the evidence as being improperly introduced because the primary purpose was investigative. Finally, Carnegie argues that the statements constituted inadmissible other acts evidence under Evid.R. 404(B) and that the statements were more prejudicial than probative

under Evid.R. 403.  We find that one of the statements contained inadmissible hearsay and its admission prejudiced the appellant.

{¶ 13} A court's ruling on hearsay is ordinarily reviewed for an abuse of discretion.  *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97.  A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable.  *State v. Hill*, 171 Ohio St.3d 524, 2022-Ohio-4544, 218 N.E.3d 891, ¶ 9 citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). The exclusion or admission of relevant evidence is within the sound discretion of the trial court, and the trial court's decision will not be overturned unless we find that the court abused its discretion.  *State v. Abdussatar*, 8th Dist. Cuyahoga No. 86406, 2006-Ohio-803, ¶ 12.

{¶ 14} Carnegie challenges the introduction of the following three statements:  (1) "Mother states that he came to her home and shot a gun off when the daughter did not come out of the house"; (2) T.B.'s statement to Robinson that Carnegie had a gun and threatened to kill her; and (3) T.B.'s statement that Carnegie told her he did not want the baby and that he did not think it was his.  The defense argued below that all the victim's statements in the medical records constitute "double hearsay," i.e., hearsay within hearsay, and must be evaluated to determine whether all levels of the statement are admissible.  (Tr. 631, 896.)

{¶ 15} The admission of the third statement is of particular concern because of the multiple evidentiary issues it raises.  In this case, Robinson testified about her interview with T.B. and what T.B. told her.  In turn, T.B. told Robinson a statement

Carnegie made to her during the incident. Finally, all of these statements are memorialized in medical records. While the trial court considered whether T.B.'s statement was admissible under the medical records exception, it did not consider whether Carnegie's statement was admissible as an admission of a party opponent.

{¶ 16} "'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). This case primarily focused on the contents of the medical records, which is where we will begin. The parties essentially agreed that the medical records were records kept in the ordinary course of business pursuant to Evid.R. 803(6). It does not necessarily follow that everything contained within those records are admissible.

{¶ 17} Hearsay within hearsay occurs when an out-of-court statement contains another out-of-court statement. Evid.R. 805. In other words, records kept in the ordinary course of business are hearsay and statements within those medical records may constitute hearsay. Nevertheless, hearsay within hearsay is not a bar to admissibility. Such testimony "is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." *Id*. The hearsay-within-hearsay rule authorizes the admission of multiple layers of hearsay offered for the truth of the assertion if each layer falls within an exception to the hearsay rule or an exception to the definition of hearsay. *See* 1 Weissenberger's, *Ohio Evidence Treatise*, Section 805.1 (2023).

{¶ 18} Here, for the purposes of our hearsay analysis, both types of hearsay, i.e., business records and statements for medical diagnoses and treatment, are admissible for different reasons. Records kept in the ordinary course of business are admissible

> based on the assumption that the records, made in the regular course of business by those who have a competent knowledge of the facts recorded and a self-interest to be served through the accuracy of the entries made and kept with knowledge that they will be relied upon in a systematic conduct of such business, are accurate and trustworthy. In other words, such records are accepted as accurate and trustworthy, until inaccuracy is shown, upon faith in the routine by which and in the purpose for which they are made.

*Weis v. Weis*, 147 Ohio St. 416, 425-426, 72 N.E.2d 245 (1947), citing *Globe Indemnity Co. v. Reinhart*, 152 Md. 439, 137 A. 43 (1927).

{¶ 19} Under Evid.R. 803(4), a hearsay statement is admissible if it was made "for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnoses or treatment." The admissibility of these statements is premised on two assumptions: (1) that a patient's statements to their physician are likely to be particularly reliable to ensure accurate diagnosis and treatment; and (2) that "'facts reliable enough to be relied on [by a medical professional] in reaching a diagnosis have sufficient trustworthiness to satisfy hearsay concerns.'" *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 39-41, quoting *State v. Dever*, 64 Ohio St.3d 401, 596 N.E.2d 436 (1992).

{¶ 20} "This court has repeatedly held that statements elicited during questioning by medical personnel for the purposes of diagnoses and treatment are not testimonial and therefore are not barred by the Confrontation Clause." *State v Diaz,* 2016-Ohio-5523, 69 N.E.3d 1182, ¶ 32 (8th Dist.), citing *State v. Echols*, 8th Dist. Cuyahoga No. 102504, 2015-Ohio-5138; *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 21; *State v. Bowleg*, 8th Dist. Cuyahoga Nos. 100263 and 100264, 2014-Ohio-1433.

{¶ 21} However, "[t]he exception is limited to those statements made by the patient, which are reasonably pertinent to an accurate diagnosis and should not be a conduit through which matters of no medical significance would be admitted." *Echols* at ¶ 28, quoting Staff Note to Evid.R. 803(4). The trial court did extensive research on this issue and gave both parties an opportunity to make their case for the admissibility of evidence in the medical records. Ultimately, the trial court ruled that statements used for medical diagnosis and treatment were admissible. Further, the trial court noted, citing *Diaz*, that the Confrontation Clause was not implicated even if these statements were ultimately used as evidence at trial since their purpose was to guide diagnosis and treatment. (Tr. 913-914.)

{¶ 22} The trial court did not err in finding the statement could be used for medical diagnosis and treatment. Undoubtedly, Carnegie's feelings about the pregnancy and the baby could create medical and safety concerns for T.B. However, Carnegie's statement was a separate statement that needed to be independently

evaluated for admissibility. Evid.R. 805; *see In re K.G.*, 1st Dist. Hamilton No. C-120772, 2013-Ohio-3160, ¶ 13.

{¶ 23} Notably, Carnegie was not the patient and Robinson did not speak to him. Nonetheless, the trial court correctly determined that the statement was relevant to medical diagnosis or treatment. However, the court did not take the necessary step of determining whether Carnegie's hearsay statement was separately admissible given he is the defendant. Robinson could consider the statement in her diagnostic and treatment decisions because it demonstrated T.B. might benefit from a safety plan and/or therapy. However, in this case, there is a distinction between the medical relevance of the statement and its admissibility at trial because of who the declarant is. Accordingly, the trial court erred when it admitted the statement without independently considering its admissibility as a party admission.

{¶ 24} We must examine whether the statement was otherwise admissible. Based on our review of the record and the law, we find that the statement was inadmissible as a party admission. Evid.R. 801(C); 801(D)(2); *McQueen v. Goldey*, 20 Ohio App.3d 41, 43, 484 N.E.2d 712 (12th Dist.1984).

{¶ 25} A statement is not hearsay if it is offered against a party and it is

> a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.

Evid.R. 801(D)(2).

{¶ 26} In *McQueen*, the court found that an unattributed admission contained in medical records was inadmissible under Evid.R. 801(D)(2). The defendant-appellee introduced McQueen's medical records, over objection, which contained a statement that the patient had stepped in front of the defendant's car causing the accident. The court of appeals found that the statement was inadmissible because there was no proof that McQueen made the statement and no evidence that McQueen adopted the truth of the statement as required under Evid.R. 801(D)(2)(a) and (b). *Id.* at 43. Additionally, the court found that the statement was not admissible under Evid.R. 803(4) because it described how the accident occurred and was not relevant for medical treatment or diagnosis. *Id.* at 44.

{¶ 27} Although here the statement was relevant for medical treatment or diagnosis, its inadmissibility otherwise cannot be disregarded. Importantly, T.B. did not testify regarding this statement, nor was she asked any questions regarding Carnegie's statement. Accordingly, Robinson's testimony alone is insufficient to establish that Carnegie's statement was an admission under Evid.R. 801(D)(2). Robinson never met nor spoke to Carnegie; therefore she did not verify that he made the statement, nor could she provide proof that he made the statement or adopted it as his own, a prerequisite for admissibility under the rule. It was therefore inadmissible, and the trial court was required to exclude it. Evid.R. 802; *Johnson,* 166 Ohio St.3d 427, at ¶ 38.

{¶ 28} Nevertheless, the improper admission of evidence should not result in the reversal of a conviction "'"unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby."'" *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 27; quoting *State v. Crawford*, 32 Ohio St.2d 254, 255, 291 N.E.2d 450 (1972), quoting R.C. 2945.83(C).

{¶ 29} We now turn to the question of whether Carnegie was prejudiced by the admission of this evidence. We find that he was. Carnegie's knowledge of the pregnancy was an essential element of the offense as charged. Domestic violence is a misdemeanor of the first degree that becomes a felony of the fifth degree when it is alleged that the accused knew the victim was pregnant. R.C. 2919.25(D)(5). Where a furthermore clause elevates the level of the offense, the furthermore clause becomes an essential element of the crime that must be proven by the state beyond a reasonable doubt. *State v. Miller*, 8th Dist. Cuyahoga No. 111785, 2023-Ohio-1141, ¶ 43, citing *State v. Allen*, 29 Ohio St.3d 53, 54, 506 N.E.2d 199 (1987).

{¶ 30} The only evidence introduced at trial that Carnegie knew T.B. was pregnant was Robinson's testimony, which she read from her summary in the medical records. The state argues that in addition to this evidence, Payton's testimony that T.B. yelled she was pregnant when she tried to get into her truck was sufficient to establish Carnegie's knowledge. We disagree.

{¶ 31} "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious

purpose to avoid learning the fact." R.C. 2901.22(B). The testimony establishes, at most, that Carnegie learned of the pregnancy during the incident. It certainly is not a statement that establishes he had a subjective belief that there was a high probability that T.B. was pregnant and that he failed to ask or acted with a purpose to avoid knowing that fact. Additionally, there was no circumstantial evidence of T.B.'s pregnancy, such as pictures or video depicting her pregnant belly.

{¶ 32} Without Robinson's testimony, there was no evidence or testimony introduced that Carnegie knew about T.B.'s pregnancy at the time of the incident. Accordingly, the admission of the evidence was not harmless beyond a reasonable doubt. Without this evidence, the state failed to establish an essential element of the crime; therefore, Carnegie was prejudiced by its admission. Accordingly, the first assignment of error is sustained and the conviction must be reversed.

{¶ 33} This leads us to the fifth assignment of error in which Carnegie argues that his conviction was not supported by sufficient evidence.

{¶ 34} "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production." *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When reviewing the sufficiency of the evidence, the court of appeals is required to examine all evidence admitted at trial, "including the improperly admitted evidence that was the source of the reversal for trial error." *State v. Gideon*, 165 Ohio St.3d 142, 2020-Ohio-5635, 176 N.E.3d 706, ¶ 29.

{¶ 35} Sufficiency of the evidence involves a review of the evidence admitted at trial and a determination of "'whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Goins*, 8th Dist. Cuyahoga No. 109497, 2021-Ohio-1299, ¶ 13, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Powell*, 2023-Ohio-2770, 222 N.E.3d 1139, ¶ 60 (8th Dist.), quoting *Jenks* at paragraph two of the syllabus.

{¶ 36} Based on the foregoing, we find that the state did present sufficient evidence at trial to support the conviction. In this circumstance, where sufficient evidence of guilt was presented, the Double Jeopardy Clause does not bar retrial of the charges. *State v. Brooks*, 8th Dist. Cuyahoga No. 91730, 2010-Ohio-2446, ¶ 20.

{¶ 37} Therefore, the fifth assignment of error is overruled.

{¶ 38} Based on the foregoing, the remaining assignments of error are moot.

{¶ 39} Judgment reversed and remanded for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY EILEEN KILBANE, J., CONCURS;
MICHELLE J. SHEEHAN, P.J., DISSENTS (WITH SEPARATE OPINION)

MICHELLE J. SHEEHAN, P.J., DISSENTING:

{¶ 40} Respectfully, I dissent from the majority opinion and would affirm Carnegie's conviction. Although I agree with the resolution of Carnegie's first assignment of error that T.B.'s medical records should have been further redacted to exclude the hearsay-within-hearsay statements, I disagree Carnegie was prejudiced by the introduction of that evidence.

{¶ 41} Carnegie argues the state did not produce admissible evidence that he was aware T.B. was pregnant at the time of the assault, which he defines as occurring when T.B. testified he smacked her in the mouth a couple of times. However, that was not the only evidence before the jury that Carnegie caused or attempted to cause T.B. harm. The evidence indicated a continuing assault from the time T.B. testified she was smacked until the time she escaped from Carnegie in Payton's car. As to Carnegie's knowledge that T.B. was pregnant, T.B. testified that she was pregnant at the time of the incident. Payton testified that Carnegie tackled T.B. in the field. She also testified that when T.B. was trying to get help, T.B. was yelling, "He's trying to kill me. Please help me. I'm pregnant. Help me." and that Carnegie reacted to those

statements.  Payton testified Carnegie "was pulling T.B. away from the cars, telling everyone to just keep driving, that it was okay, just keep going, everything was fine." Further, T.B. suffered multiple injuries across her body, including to her arm, which she testified was caused by Carnegie.  Accordingly, I would not find that Carnegie was prejudiced by the introduction of the hearsay statements within the medical records because there was other admissible evidence that he was aware T.B. was pregnant at the time he assaulted her.  Having found no prejudice, I would also overrule Carnegie's remaining assignments of error and affirm his conviction.